UNITED STATES of America,
Appellee,

v.

Derek PEDRAGH, also known as Derrick Pedraja, also known as Derik Pedraja, also known as Derek Pedraja, Defendant–Appellant.

No. 99–1677.

United States Court of Appeals,
Second Circuit.

Argued: May 5, 2000.

Decided: Sept. 15, 2000.

Deborah I. Meyer, New York, NY (Sam A. Schmidt, on the brief), for Defendant–Appellant.

Michael S. Schachter, Assistant United States Attorney, Southern District of New York, New York, NY (Mary Jo White, United States Attorney, and Baruch Weiss, Assistant United States Attorney, Southern District of New York, New York, NY, on the brief), for Appellee.

Before: CALABRESI, PARKER, and STRAUB, Circuit Judges.

PARKER, Circuit Judge:

Defendant–Appellant Derek Pedragh appeals from the judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Allen G. Schwartz, Judge). The district court applied a base offense level of 26 pursuant to U.S.S.G. § 2K2.1(a)(1) because it found that Pe-

dragh had two "prior felony convictions" at the time of sentencing, despite the fact that Pedragh was not convicted on these other charges until after he committed the instant offense. Pedragh argues that because those convictions that occurred after the instant offense are not "prior felony convictions" under U.S.S.G. § 2K2.1(a)(1), the district court improperly assigned him a base offense level of 26.

For the following reasons, we find that convictions that occur after commission of the offense for which the defendant is being sentenced are not "prior felony convictions" for purposes of U.S.S.G. § 2K2.1(a)(1). We therefore vacate and remand for resentencing consistent with this opinion.

## I. BACKGROUND

On three different occasions in August 1998, Derek Pedragh sold firearms to an undercover New York City police officer. On the first occasion, in early August, Pedragh sold the officer two sawed-off shotguns. One week later, Pedragh sold the officer a rifle and a pistol. Two weeks after that, Pedragh sold the officer another pistol, as well as a shoulder holster, a magazine, and twelve 9 mm cartridges. As a result of these sales, Pedragh was charged with four counts of selling firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), and two counts of possessing unregistered modified shotguns, in violation of 26 U.S.C. § 5861(d).

Pedragh pleaded guilty to all the charges against him. Prior to his sentencing, the Probation Office prepared a Pre-Sentence Report ("PSR"), which recommended a sentence range of 70 to 87 months. The range was based, among other things, on the Probation Office's determination of the applicable base offense level under U.S.S.G. § 2K2.1, the guideline that governs firearms convictions such as Pedragh's. That section provides that "if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and the defendant had at

least two prior felony convictions of either a crime of violence or a controlled substance offense," the base offense level is 26. U.S.S.G. § 2K2.1(a)(1)(1998).

According to the Probation Office, Pedragh met the requirements of this section. His offense involved at least one firearm described in 26 U.S.C. § 5845(a), i.e., a sawed-off shotgun. *See* 26 U.S.C. § 5845(a) (defining a firearm as, *inter alia,* "(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length"). In addition, at the time Pedragh was sentenced on the federal firearms charges, he had, for the purposes of § 2K2.1(a)(1), "at least two prior felony convictions," since (1) he was arrested for selling crack cocaine in February 1998, (2) he was arrested for attempted robbery in September 1998, and (3) he pleaded guilty and was convicted of both offenses in February 1999.

After deciding that Pedragh's proper base offense level was 26 under § 2K2.1(a)(1), the Probation Office determined that Pedragh should receive an offense level increase under U.S.S.G. § 2K2.1(b)(1)(B) because his crimes involved five firearms. *See* U.S.S.G. § 2K2.1(b)(1)(B) (requiring a two-level increase in offense level if there are 5 to 7 firearms involved in the offense). Pedragh was, however, deemed to be entitled to a three-level decrease under U.S.S.G. § 3E1.1 for acceptance of responsibility. Thus, his total offense level, after both of these adjustments, was 25. Finally, due to his felony convictions for selling crack cocaine and for attempted robbery, Pedragh was in criminal history category III. The range, for an offense level of 25 and a criminal history category of III, came to 70 to 87 months.

Before he was sentenced, Pedragh submitted a letter to the district court challenging various aspects of the PSR, includ-

ing the calculation of his base offense level under U.S.S.G. § 2K2.1(a)(1). The district court rejected all of Pedragh's arguments, save his request that his sentence run concurrently with his undischarged state sentence. As a result, Pedragh was sentenced to a term of 60 months' incarceration on the first four counts against him, and a term of 70 months' imprisonment on the last two counts. Both of these terms were to run concurrently with each other as well as with the undischarged portion of Pedragh's state sentence. In addition, the district court imposed a mandatory special assessment of $600 and three years of supervised release to follow Pedragh's imprisonment.

Pedragh now appeals his sentence, arguing that the district court improperly calculated his base offense level under U.S.S.G. § 2K2.1. Pedragh does not contest that his offense involved a firearm listed in 26 U.S.C. § 5845(a), as required under § 2K2.1(a)(1). Nor does he dispute that his two felony convictions, the sale of crack cocaine and the attempted armed robbery, constitute "a controlled substance offense" and "a crime of violence," respectively, under the same guideline. Pedragh's argument is simply that, because he was not convicted on the other felony charges until *after* the conduct that served as the basis for the federal charges, those felony charges cannot constitute "prior felony convictions" that he "had" for purposes of § 2K2.1(a)(1). We are therefore presented with a straightforward question of interpretation of a Sentencing Guideline: do felony convictions that post-date the offense conduct at issue constitute "prior felony convictions" that a defendant "had" under U.S.S.G. § 2K2.1(a)(1)?

■ Because this is a question of the interpretation of the Sentencing Guidelines, our review is *de novo*. *See United States v. Shepardson*, 196 F.3d 306, 309 (2d Cir.1999), *cert. denied*, — U.S. —, 120 S.Ct. 1258, 146 L.Ed.2d 114 (2000). We conclude, after considering both the guideline and the commentary thereto,

that the district court improperly interpreted § 2K2.1(a)(1).

## II.  DISCUSSION

■ Pedragh makes three principal arguments in support of his interpretation of § 2K2.1(a)(1). First, he argues that the language of the guideline is clear because it uses the terms "had" and "prior" to describe the felony convictions that may be counted. That is, he contends that "[t]he use of the past-tense verb 'had,' rather than the present-tense 'has,' unambiguously indicates that the relevant period for considering prior convictions is not open-ended," and "[t]he most natural reading of the guideline is that the number of prior felony convictions must be determined as of the date that the defendant commits the federal firearm offense." *United States v. Barton*, 100 F.3d 43, 45 (6th Cir.1996). He argues that the inclusion of the word "prior" further supports this reading because it means that there must be an event that occurred before the instant offense. *See id.* Finally, he asserts that, because the language of the guideline is clear, we should not look to the commentary for guidance as to how § 2K2.1 should be read.

Second, Pedragh contends that his interpretation is most consistent with the overall structure of the Sentencing Guidelines Manual, given the placement of this particular guideline in Chapter Two, which deals with "Offense Conduct." He asserts that § 2K2.1 is focused on whether the individual had prior felony convictions when he made the illegal firearm sale because persons who had prior convictions are potentially more dangerous and show a heightened disregard for the law. If the felony convictions occurred after a defendant was dealing in the firearms, according to Pedragh, that person was not more dangerous at the time he committed the firearms offense and thus, since his crime is less serious, his base offense level should not be enhanced. As a result, he argues that it is "apparent that the relevant event for

assessing whether a conviction is 'prior' is the commission of the federal firearm offense." *Id.*

Third, Pedragh argues that to count the non-firearms felony convictions both to increase his offense level under § 2K2.1(a)(1) and to determine his criminal history category constitutes impermissible double counting. In his view, the guideline should be read to avoid this alleged problem.

The Government counters that the language of § 2K2.1(a)(1) must be read in light of the commentary to that section. In particular, it points to Application Note 5, which provides:

"Crime of violence," "controlled substance offense," and "prior felony conviction(s)," are defined in § 4B1.2 (Definitions of Terms Used in Section 4B1.1), subsection (a), subsection (b), and Application Note 1 of the Commentary, respectively. For purposes of determining the number of such convictions under subsections (a)(1), (a)(2), (a)(3), and (a)(4)(A), count any such prior conviction that receives any points under § 4A1.1 (Criminal History Category).

U.S.S.G. § 2K2.1, comment. n. 5. The Government argues that even if there were some question as to what was meant by the terms "had" and "prior" in § 2K2.1(a)(1), the commentary makes clear that post-offense convictions must be counted. The second sentence of this note instructs the court to count "any such prior conviction that receives any points under § 4A1.1" when, as is the case here, a defendant's base offense level is being determined under subsection (a)(1) of § 2K2.1. In this case, Pedragh's two felony convictions both properly received points under § 4A1.1. *See* U.S.S.G. § 4A1.2, comment. n. 1.

The Government further observes that the first sentence of this commentary, when defining the term "prior felony conviction(s)" for the purposes of § 2K2.1, explicitly references the definitions in

U.S.S.G. § 4B1.2(a) and (b), as well as Application Note 1 to § 4B1.2. But, significantly, the sentence does not reference § 4B1.2(c), which is the only remaining subsection of § 4B1.2, and which defines "prior felony convictions" to mean that "the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.2(c). In other words, the Government argues that if the Sentencing Commission intended § 2K2.1 to be read to exclude post-offense convictions, it would have simply incorporated the entire set of definitions in § 4B1.2. Since the definition in § 4B1.2(c) was specifically left out, the Government maintains that the term "prior felony convictions" in § 2K2.1 "was not intended to be limited to convictions sustained before commission of the instant offense conduct." Appellee's Brief at 18.

Finally, the Government contends that there is no impermissible double counting, since, as this court has made clear, "Congress is free to prescribe any sentence that in its view reflects the seriousness of the underlying offense and the characteristics of the offender." *United States v. Torres–Echavarria,* 129 F.3d 692, 699 (2d Cir. 1997). Accordingly, so long as the court does not augment the defendant's sentence "in contravention of the applicable statute or Sentencing Guideline," no forbidden double counting occurs. *Id.* Here then, it is perfectly alright for the guidelines to require the court to include Pedragh's two felony convictions when calculating both his base offense level and his criminal history category, because the intention to do so has been made clear.

We are presented on the one hand with Pedragh's interpretation of § 2K2.1(a)(1), which argues (1) that the language of the section is clear and does not include post-offense conduct, (2) that the placement of this particular guideline in the "Offense Conduct" chapter must be considered

when interpreting the guideline, and (3) that any other reading of the guideline will result in double counting and hence should be avoided. On the other hand, we have the Government's construction, which says that the language of § 2K2.1(a)(1) is not crystal clear, but if the court looks to the commentary, it is manifest that Pedragh's post-offense felony convictions were properly counted. The question for us, then, is which of these ways of reading § 2K2.1(a)(1) reflects the proper method to be used in interpreting the Sentencing Guidelines.

The Supreme Court faced a similar issue in *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). In that case, the question of the proper weight or the "legal force" to be given to guidelines' commentary was presented to the Court together with a number of allegedly analogous interpretation situations whose methodology the Court was urged to adopt. *Id.* at 43, 113 S.Ct. 1913. The Court first rejected the idea that it should "treat commentary as a contemporaneous statement of intent by the drafters or issuers of the guideline, having a status similar to that of, for example, legislative committee reports or the advisory committee notes to the various federal rules of procedure and evidence." *Id.* It did so because the commentary is often issued after the guideline it interprets has been promulgated. *See id.* at 44, 113 S.Ct. 1913. The Court also rejected "an analogy to an agency's construction of a federal statute," because "[c]ommentary, unlike a legislative rule, is not the product of delegated authority for rulemaking." *Id.*

The Court instead likened the role of the commentary in interpreting the guidelines to "an agency's interpretation of its own legislative rule." *Id.* As such, the commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 38, 113 S.Ct. 1913. This, the Court explained, is appropriate because "[t]he Commission, af-

ter all, drafts the guidelines as well as the commentary interpreting them, so we can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute." *Id.* at 45, 113 S.Ct. 1913.

After the decision in *Stinson,* our court has frequently repeated the Supreme Court's statement that the commentary is "binding authority," unless it is inconsistent with the underlying guideline. *United States v. Jackson,* 60 F.3d 128, 131 (2d Cir.1995); *see also United States v. Chen,* 127 F.3d 286, 290–91 (2d Cir.1997) ("[C]ommentary ... is entitled to controlling weight from the courts unless it violates the Constitution or a federal statute or is inconsistent with, or a plainly erroneous reading of, that Guideline."); *United States v. Stevens,* 66 F.3d 431, 436 (2d Cir.1995) (same); *United States v. Kinder,* 64 F.3d 757, 759 (2d Cir.1995) (same).

■ But such statements do not answer the question of whether there is some threshold, like ambiguity in the guideline, that must be met before the commentary is considered, or whether instead, the commentary and guideline may be read together for a combined meaning, *ab initio,* subject only to the caveat that if the two conflict, the guideline governs. We today hold that, since the commentary is part and parcel of the Sentencing Guidelines Manual and, as the Supreme Court has pointed out, is written by the same body that is charged with drafting the guidelines, the two are to be read together. No threshold test of ambiguity need be passed before the commentary can be consulted. *See Stinson,* 508 U.S. at 44, 113 S.Ct. 1913 ("Rather, commentary explains the guidelines and provides concrete guidance as to how even *unambiguous* guidelines are to be applied in practice." (emphasis added)).

In other words, we do not read the commentary as if it were something akin

to legislative history (because legislative history may not indicate the final intent of Congress and arguably demonstrates the views of only some members of Congress). Nor do we treat the commentary as if it were an agency's interpretation of a federal statute (because an agency is not the body that drafted the statute). Nor finally do we approach the commentary and guidelines as we would a contract and extrinsic evidence thereto (because none of the reasons based on avoidance of fraud and of uncertainty that limit the reading of contracts to its four corners, unless there is ambiguity, apply in the guidelines/commentary context). Instead, as the Supreme Court has suggested, we construe the guideline and its commentary together, and seek to harmonize them. If a harmonizing interpretation is possible, that is the proper one (so long as it does not violate the Constitution or a federal statute). In the unlikely case that such a reading does not exist, for example if the guideline and commentary are plainly inconsistent,[1] the guideline's "plain language of course controls." *United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir.1996).

With this background in mind, we turn to the specific question before us: should post-offense convictions be included as "prior felony convictions" that a defendant "had" for the purposes of § 2K2.1(a)(1)? After considering both U.S.S.G. § 2K2.1(a)(1) and the commentary to that guideline found in Application Note 5, we conclude that they should not. In so holding, we join the Sixth Circuit, *see Barton*, 100 F.3d at 46, and we reject the position taken by the majority of circuits that have considered this issue, *see United States v. Laihben*, 167 F.3d 1364, 1365 (11th Cir.) (concluding that post-offense convictions

are included in "prior felony convictions" under § 2K2.1(a)(1)), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); *United States v. Luna,* 165 F.3d 316, 325 (5th Cir.) (same), *cert. denied,* 526 U.S. 1126, 119 S.Ct. 1783, 143 L.Ed.2d 811 (1999); *United States v. Pugh,* 158 F.3d 1308, 1309 (D.C.Cir.1998) (same), *cert. denied,* 526 U.S. 1125, 119 S.Ct. 1782, 143 L.Ed.2d 810 (1999); *United States v. Gooden,* 116 F.3d 721, 725 (5th Cir.1997) (same).[2]

Three of these cases premised their discussion on the notion that the language of § 2K2.1(a)(1) is ambiguous, and therefore the commentary could be consulted as guidance in resolving the meaning of that guideline. *See Laihben,* 167 F.3d at 1366; *Pugh,* 158 F.3d at 1311; *Gooden,* 116 F.3d at 724 n. 5. As noted above, we believe that one need not find ambiguity in a guideline before referring to the commentary. *See Stinson,* 508 U.S. at 44, 113 S.Ct. 1913. We therefore consider the guideline in conjunction with the commentary, and we find that the clear, unambiguous language of the guideline is best harmonized with the commentary to reach the conclusion that post-offense convictions should not be included as "prior felony convictions" that a defendant "had" for purposes of § 2K2.1(a)(1).

Section 2K2.1(a)(1) assigns a base offense level of 26 "if the offense involved a firearm described in 26 U.S.C. § 5845(a) ... and the defendant *had* at least two *prior* felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(1) (emphasis added). Thus, the offense conduct described in § 2K2.1(a)(1) has two attributes: one is that the offense involved a certain type of firearm, and the other is that the

---

**1.** Unlikely, perhaps, but not impossible. *See, e.g, Stevens,* 66 F.3d at 436 (finding that the effect of apportioning a sentence as the commentary to § 2J1.7 contemplated was "to increase the sentence attributable to the underlying offense beyond that authorized by the guidelines").

**2.** In *United States v. McCary,* 14 F.3d 1502 (10th Cir.1994), the Tenth Circuit appeared to indicate that it would decide this question as the majority of circuits have. The facts in *McCary,* however, were such that the issue of post-offense convictions was not directly reached. *See Barton,* 100 F.3d at 45–46 (explaining the sequence of events in *McCary*).

person who committed the offense (the defendant) *had* at least two *prior* felony convictions. The use of the past tense in this context compels the conclusion that the provision applies when the defendant had two prior convictions at the time of commission of the offense, not later at the time of sentencing. The Sixth Circuit has so held. *See United States v. Barton,* 100 F.3d 43, 45 (6th Cir.1996) ("The most natural reading of the guideline is that the number of prior felony convictions must be determined as of the date that the defendant commits the federal firearm offense, not the date of sentencing for that offense...."). If the Sentencing Commission had intended a sentencing judge to consider convictions sustained prior to sentencing, it could easily have used the present tense "has," or otherwise made its intention clear. When the Sentencing Commission did intend to include all convictions sustained prior to sentencing, it expressed that intention clearly. *See* U.S.S.G. § 4A1.2, comment. n. 1 (defining "prior sentence" as "a sentence imposed prior to sentencing on the instant offense."); *see also Barton,* 100 F.3d at 46 ("Where the Sentencing Commission has intended the courts to consider post-offense actions in determining the appropriate sentence, it has had no difficulty in doing so.").

This interpretation of § 2K2.1(a)(1) is supported by the placement of § 2K2.1 in Chapter 2 of the guidelines, which concerns "Offense Conduct." In *United States v. Leviner,* Judge Gertner persuasively reasoned that this placement was determinative:

> While Chapter 2—"Offense Conduct," focuses on the offense, Chapter 4— "Criminal History and Criminal Livelihood," focuses on the offender. Each chapter promotes a different sentencing purpose or mix of purposes specified in 18 U.S.C. § 3553(a)(2). While Chapter 2 reflects the goals of retribution, and just deserts, Chapter 4 places a greater emphasis on rehabilitation and recidi-

vism. It thus makes sense to consider under the "offense" rubric, those convictions which defined [the defendant's] status at the time he committed the crime, and, under the "offender" rubric, all aspects of his criminal history.

*United States v. Leviner,* 31 F.Supp.2d 23, 28 (D.Mass.1998) (footnote omitted); *see* U.S.S.G. Ch. 1, Pt. A, intro. comment. 2 (Sentencing Reform Act developed guidelines to further purposes of deterrence, incapacitation, just punishment, and rehabilitation); U.S.S.G. Ch. 4, Pt. A, intro. comment. (discussing 18 U.S.C. § 3553(a)(2) and stating that factors included in § 4A1.1 and § 4A1.3 are consistent with research on recidivism); *see also Barton,* 100 F.3d at 46. As the Sixth Circuit reasoned in *Barton:* "Conceptually, it is difficult to see how unrelated post-offense criminal actions can retroactively render the original federal offense more serious." *Barton,* 100 F.3d at 45. Although the Introduction to Chapter Two refers to Chapter Four (Career Offenders and Criminal Livelihood), it refers specifically only to *Part B* of Chapter Four, which defines "prior felony convictions" to include only those convictions sustained prior to commission of the instant offense. U.S.S.G. § 4B1.2(c). Thus, as would be expected, the Introduction to the "Offense Conduct" chapter indicates that the convictions that are relevant to offense conduct are the ones sustained prior to the instant offense. U.S.S.G. Ch. 2, intro. comment.

The Government argues that even if the guideline standing alone would lead to the conclusion that post-offense convictions are not included, the Government's interpretation of the guideline is the only way to harmonize the guideline and the commentary. The Government's interpretation, which turns a plain reading of the guideline on its head, does no such thing. First, Application Note 5 does not make clear that post-offense convictions are to be counted as "prior felony convictions." The first sentence of Application Note 5 defines the term "prior felony conviction" by refer-

ence to Application Note 1 of § 4B1.2. U.S.S.G. § 2K2.1, comment. n. 5. That commentary, in turn, does nothing to clarify the meaning of "prior"-it only addresses "felony conviction[s]." *See Pugh,* 158 F.3d at 1311. The note thus defines "prior felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, comment. n. 1. This definition uses the word "prior," but provides no elucidation of its meaning.

The second sentence of Application Note 5 is equally unhelpful. It states: "For purposes of determining the number of such convictions under subsection[ ] (a)(1), ... count any *such* prior conviction that receives any points under § 4A1.1 (Criminal History Category)." U.S.S.G. § 2K2.1 comment. n. 5 (emphasis added). The word "such" limits the convictions counted to those that qualify under the definition in the first sentence of Application Note 5; it does not direct courts to count *all* convictions that receive points under § 4A1.1 and does nothing to illuminate the meaning of "prior." Since the "definition" referred to in Application Note 5 does not define "prior," we are left without guidance on the issue of which prior convictions count as "such prior conviction[s]." In the absence of guidance from Application Note 5, we are left to interpret the language of the guideline itself. As indicated, the plain meaning of that language leads to the conclusion that only convictions sustained prior to the commission of the offense at issue, and not those sustained prior to sentencing, are counted in determining the base offense level.

The Government's reliance on the fact that Application Note 5 does not incorporate § 4B1.2(c) into its definition of "prior felony conviction" is misplaced. Section 4B1.2(c) does not define "prior felony conviction," it defines "*two* prior felony convic-

tions," and goes into some detail about how to count those two convictions. *See* U.S.S.G. § 4B1.2(c) (emphasis added). It is quite plausible to conclude, therefore, that the Sentencing Commission did not incorporate § 4B1.2(c) into Application Note 5 for the simple reason that it would lead to confusion under § 2K2.1(a), which has two subsections that require only one prior conviction. Because there are at least two plausible explanations for the Commission's omission of § 4B1.2(c), its omission from Application Note 5 offers little support to the Government's interpretation.

■ Finally, our reading of § 2K2.1(a)(1) avoids double counting, which is certainly not improper if it serves a legitimate purpose intended by Congress and the Sentencing Commission, *see United States v. Campbell,* 967 F.2d 20, 25 (2d Cir.1992) ("While this may be double counting in the literal sense, double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis."), but which is to be avoided if it is not required, *see id.* at 24–25; *United States v. Mandel,* 991 F.2d 55, 58 (2d Cir.1993). Within certain limits, Congress is free to decide what characteristics should be considered when determining the appropriate sentence for an offense, given the seriousness of the offense and the offender's past. *See Campbell,* 967 F.2d at 24–25; *Torres–Echavarria,* 129 F.3d at 699. Here, Congress has not manifested an intent to double count post-offense convictions. Rather, for purposes of determining the "offense conduct" of the instant offense, Congress has chosen to take into account only those convictions sustained prior to the instant offense.

### III. CONCLUSION

We therefore conclude that the district court improperly counted Pedragh's two felony convictions for the sale of crack cocaine and for attempted robbery as two "prior felony convictions" under U.S.S.G. § 2K2.1(a)(1), and therefore incorrectly as-

signed him a base offense level of 26 under that guideline. Accordingly, we VACATE the judgment of the district court and REMAND for resentencing consistent with this opinion.