08-4811-cr
United States v. Byors

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: October 9, 2009)                                        Decided:  October 29, 2009)

Docket No. 08-4811-cr

UNITED STATES OF AMERICA,

*Appellee*,

v.

JOHN BYORS,

*Defendant-Appellant.*

Before:  CABRANES and LIVINGSTON, *Circuit Judges*, KORMAN, *District Judge.*[*]

Defendant-appellant John Byors appeals from a judgment of the United States District Court for the District of Vermont (William K. Sessions, III, *Chief Judge*) sentencing him principally to 135 months' incarceration following his guilty plea to sixteen counts of mail fraud, wire fraud, travel fraud, bank fraud, and money laundering.  On appeal, defendant argues that the District Court erred procedurally by miscalculating his sentencing range under the United States Sentencing Guidelines. Specifically, he alleges that the District Court erred in (1) not offsetting the loss attributable to his fraud by amounts that represented legitimate investment in his business and (2) applying a two-level enhancement for obstruction of justice.  We hold that a defendant is not entitled to an offset against a

---

[*] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

1

loss based on business expenses that confer no benefit upon the victims. We further hold, on an issue of first impression in this Circuit, that Application Note 2(C) to section 2S1.1 of the Guidelines does not preclude an enhancement for obstruction of justice pursuant to section 3C1.1 of the Guidelines where a defendant's obstruction relates to an offense *underlying* a money laundering offense but not to the money laundering offense itself. Accordingly, we affirm the judgment of the District Court.

> BRADLEY S. STETLER, Stetler, Allen & Kampmann, Burlington, VT, *for defendant-appellant John Byors.*

> GREGORY L. WAPLES, Assistant United States Attorney, District of Vermont (Thomas D. Anderson, United States Attorney, Paul J. Van de Graaf, Assistant United States Attorney, *on the brief*), *for appellee United States of America.*

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant John Byors ("Byors" or "defendant") appeals from a judgment of the United States District Court for the District of Vermont (William K. Sessions III, *Chief Judge*) sentencing him principally to 135 months' incarceration following his plea of guilty to sixteen counts of mail fraud, wire fraud, travel fraud, bank fraud, and money laundering. On appeal, defendant argues that the District Court erred procedurally by miscalculating his sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). Specifically, he argues that the District Court erred in (1) not offsetting the loss attributable to his fraud by legitimate business expenditures and (2) applying a two-level enhancement for obstruction of justice. Whether an enhancement is appropriate where a defendant has obstructed the investigation or prosecution of an *underlying offense* but has not obstructed the investigation or prosecution of a *subsequent* money laundering offense is an issue of first impression in this Circuit.

## BACKGROUND

Defendant's conviction arises from his efforts to raise capital for a marble business based in Vermont. As part of those efforts, defendant made misrepresentations to investors about the value of the assets securing their loans, including the value of marble blocks and his rights under a lease of a quarry; purported orders to purchase marble by developers in the Middle East; his ownership of a patent for a process of turning marble chips into marble blocks; and the return the investors would realize on their investment. Furthermore, contrary to his representations to investors that their money would be used for business-related purposes, defendant used substantial amounts of the borrowed funds to make down payments on houses in Florida and Maine, to purchase automobiles and horses, and for a variety of other personal expenditures.

After several months of investigation by the Internal Revenue Service and the Federal Bureau of Investigation, defendant was arrested on December 20, 2005, on a criminal complaint charging him with bank fraud. He was released on bond and under conditions that required, among other things, that he obtain approval from Pretrial Services before requesting or applying for a personal or business loan.

Notwithstanding his conditions of release, on December 29, 2005, defendant borrowed $50,000 from Germaine Bourdeau ("Bourdeau"), a person who had loaned him money in the past. At the defendant's request, the money was transferred by a check made payable to Robert Byors, defendant's uncle, and deposited into a checking account that defendant had opened in his uncle's name. Defendant told Bourdeau that the loan was for legal fees but proceeded to use the majority of the funds for other expenditures.

In mid-February 2006, defendant called Robert Byors to ask him to come to Vermont to testify that he, and not defendant, was in charge of the checking account that defendant had opened. Robert

3

Byors refused. Later that same month, defendant asked his wife to convince Bourdeau to tell law enforcement that his $50,000 loan to defendant was for legal fees and personal expenses.

On April 13, 2006, defendant was indicted for mail fraud, wire fraud, bank fraud, travel fraud, money laundering, and contempt of court. He negotiated a plea agreement with the government, but before he could enter a plea, the government withdrew its offer after learning that defendant was continuing to solicit money from investors while he was incarcerated. A Superseding Indictment and a Second Superceding Indictment were subsequently issued, and on March 4, 2008, defendant pleaded guilty to sixteen counts of fraud and money laundering as charged in the Second Superseding Indictment.

Defendant was sentenced by Judge Sessions on September 22, 2008. At the sentencing hearing, Judge Sessions adopted, over defendant's objection, the findings from the Presentence Report that the loss attributable to defendant's fraud was over $9 million and that defendant attempted to obstruct justice by tampering with witnesses. Those findings resulted in a twenty-level sentence enhancement based on the amount of the loss pursuant to U.S.S.G. § 2B1.1(b)(1)(K) and a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. With those enhancements, defendant's sentence range under the Guidelines was 135 to 168 months. Judge Sessions imposed a sentence of 135 months' incarceration and five years' supervised release. Defendant appeals that sentence.

## DISCUSSION

Following *United States v. Booker*, 543 U.S. 220 (2005), a district court has broad latitude to "impose either a Guidelines sentence or a non-Guidelines sentence." *United States v. Sanchez*, 517 F.3d 651, 660 (2d Cir. 2008); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). Accordingly, the role of the Court of Appeals is limited to examining a sentence for reasonableness, which is akin to review under an "abuse of discretion" standard. *See Cavera*, 550 F.3d at 187-88; *see also*

4

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 591 (2007) ("[C]ourts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard."); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." (internal quotation marks, alteration, and citation omitted)). This standard applies "both to the [substantive reasonableness of the] sentence itself and to the procedures employed in arriving at the sentence." *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008) (internal quotation marks omitted). Procedural error occurs where the District Court makes a mistake in calculating the Guidelines range, treats the Guidelines as mandatory, fails to consider the factors listed in 18 U.S.C. § 3553(a), rests its sentence on clearly erroneous findings of fact, or fails adequately to explain its assigned sentence. *See Cavera*, 550 F.3d at 190.

## I.     The District Court's Loss Calculation

Under the Guidelines, the offense level for fraud offenses is linked explicitly to the harm caused to victims, measured in terms of monetary loss. *See generally* U.S.S.G. § 2B1.1(b). The application notes to the Guidelines shed further light on the meaning of the provisions and assist courts in applying the Guidelines. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Application Note 3(B) provides that loss may be calculated based on the gain realized by the wrongdoer "only if there is a loss but it reasonably cannot be determined." U.S.S.G. § 2B1.1 cmt. n.3(B). Application Note 3(E) also provides that the loss should be reduced, or offset, by "[t]he money returned, and the fair market

5

value of the property returned and the services rendered, by the defendant . . . to the victim before the offense was detected." U.S.S.G. § 2B1.1 cmt. n.3(E)(i).

The District Court, after crediting amounts repaid to the victims, calculated the loss attributable to defendant's fraud to be over $9 million and, accordingly, enhanced defendant's offense level by twenty levels. Defendant argues that the District Court erred by not further offsetting the $9 million loss by amounts of money he spent to "capitalize" his quarry business. He presented evidence at sentencing that he used some of the borrowed money for legitimate business expenditures, and he maintains that those expenditures should be treated as "services rendered" to the victims, under Application Note (3)(E).

The plain language of Application Note 3(E) readily disposes of defendant's argument. The Guidelines do not require a loss to be offset by any legitimate expenditures, as defendant argues, but rather by "value" that has been conferred on victims in the form of money or property returned or services rendered. *See id.* § 2B1.1 cmt. n.3(E)(1) (explaining that loss should be reduced by "the *fair market value* of . . . services rendered . . . to the victim" (emphasis added)). Byors's expenditures, legitimate or not, conferred nothing of value and no benefit on his victims, who were his investors and creditors. He rendered no "services" to them and failed to deliver any return on their "investment." Accordingly, the District Court did not err in failing to treat defendant's capitalization of his business as "services rendered" to his victims.

Defendant also argues that the District Court's calculation overstated the loss because, in some instances, he used the borrowed money for precisely the purpose he promised investors. In effect, he argues that those amounts should not be counted towards the loss because investors received something of value in exchange for their money—according to Byors these investors received what they were promised. Unlike the cases defendant relies upon, however, defendant's victims were left

6

with nothing of value when the fraud was uncovered.  *See, e.g.*, *United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008) (finding that the District Court erred in calculating loss based on the total value investors paid for securities and noting that "investors did obtain an interest in a company engaged in producing and distributing a motion picture" and that the securities likely had some "actual value").  Accordingly, the District Court did not err in calculating the loss based on the victims' total $9 million investment.

## II.　The Obstruction of Justice Enhancement

Defendant also asserts that the District Court erred in applying a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  Defendant does not dispute that he engaged in obstructive conduct by attempting to influence the testimony of two witnesses.  He maintains, however, that the obstruction of justice related only to his underlying fraud offenses, not to the money laundering offenses.

Relying on Application Note 2(C) to U.S.S.G. § 2S1.1, the guideline applicable to money laundering, defendant argues that an obstruction of justice enhancement may be applied only when the obstruction of justice relates to the *money laundering itself*.  An enhancement may not be applied, defendant contends, when the obstruction of justice relates to the *underlying* offenses—here, the fraud offenses—but *not* to the money laundering offenses themselves.  Defendant's argument presents an issue of first impression in this Circuit, inasmuch as we have not yet examined the interaction between the obstruction of justice guideline, U.S.S.G. § 3C1.1, and the money laundering guideline, *id.* § 2S1.1, where a defendant has obstructed the investigation or prosecution of an underlying offense but has *not* obstructed the investigation or prosecution of a subsequent money laundering offense.

In considering the interplay of the Guidelines and their commentary, we have explained that "we construe the guideline and its commentary together and seek to harmonize them.  If a harmonizing interpretation is possible, that is the proper one (so long as it does not violate the Constitution or a

federal statute)." *United States v. Pedragh*, 225 F.3d 240, 245 (2d Cir. 2000). If, however, a "guideline and commentary are plainly inconsistent, the guideline's plain language of course controls." *Id.* (footnote and internal quotation marks omitted). With these principles in mind, we turn to the guideline and application note at issue.

The obstruction of justice guideline is a Chapter Three adjustment which provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The guideline thus contains two elements: (1) a temporal element, which requires the obstruction to occur during the investigation, prosecution, or sentencing of the offense of conviction[2] and (2) a nexus element, which requires that the obstructive conduct relate to the offense of conviction.

Here, there is no dispute that the first element is satisfied—defendant's obstructive conduct occurred during the government's investigation into the money laundering offense. The first Indictment charged Byors with thirty counts of money laundering and was returned roughly two months after Byors's attempts to tamper with witnesses. Defendant argues, however, that Application Note 2(C) regarding money laundering amends the obstruction guideline's nexus requirement and makes enhancement permissible only if the obstruction relates directly to money laundering and not to an underlying offense. Application Note 2(C) states, in its entirety:

> Application of Chapter Three Adjustments. Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (*i.e.*, the laundering of

---

[2] The obstruction guideline was amended in 2006 to change "during the course of" to "with respect to." Neither party attributes any significance to that amendment for the purpose of this appeal, and we therefore assume, without deciding, that clause (A) still serves the purpose of imposing a temporal requirement. *See* U.S.S.G. supp. to app. C, amend. 693 (2006), at 181-82. (explaining that the reason for amendment was to clarify that pre-investigative conduct can form the basis for an adjustment under § 3C1.1).

8

criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

U.S.S.G. § 2S1.1 cmt. n.2(C).

Reading both the obstruction guideline and Application Note 2(C) together, the most logical construction is to treat references to the "offense of conviction" in § 3C1.1 as references to the offense of money laundering. *See Pedragh*, 225 F.3d at 245 ("[W]e construe the guideline and its commentary together and seek to harmonize them."). Accordingly, in the context of money laundering, the obstruction guideline would read as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the [money laundering offense], and (B) the obstructive conduct related to (i) the defendant's [money laundering offense] and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

*See* U.S.S.G. § 3C1.1; *see also id.* § 2S1.1 cmt. n.2(C).

Under such a construction, Byors's witness tampering clearly satisfies the requirements for the enhancement. Not only did his obstruction occur during the money laundering investigation, but it also "relate[s] to" fraud, which is "relevant conduct" or at least an "offense" that is "closely related" to the money laundering offense. *See* U.S.S.G. § 1B1.3 (defining "Relevant Conduct" as "all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense").

We reject the defendant's argument that an application note to a *separate* guideline implicitly "creates an exception" to § 3C1.1. The interpretation of Application Note 2(C) that defendant urges us to adopt would negate, *sub silentio*, substantial portions of an entirely different guideline and is inconsistent with our practice of seeking to "harmonize" commentary with the Guidelines. *See Pedragh*,

225 F.3d at 245. Accordingly, we conclude that the District Court did not err in imposing a two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.