**UNITED STATES of America, Appellee,**

v.

**Daniel FATICO, Appellant.**

**Nos. 1092–93, Dockets 79–1100, 79–2042.**

United States Court of Appeals,
Second Circuit.

Argued June 5, 1979.

Decided Aug. 13, 1979.

Michael Rosen, Saxe, Bacon & Bolan, P. C., New York City (Roy M. Cohn and Howard F. Husum, New York City, of counsel), for appellant.

Paul F. Corcoran, Sp. Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. New York, and Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before OAKES and MESKILL, Circuit Judges, and STEWART, District Judge.*

OAKES, Circuit Judge:

This is the second appeal in connection with appellant's sentencing. The court imposed the sentence, four years' imprisonment to be served consecutively to another sentence imposed for a different crime, appeal as to which is pending, after a plea of guilty in the United States District Court for the Eastern District of New York, Jack B. Weinstein, Judge. The plea was to a conspiracy charge under 18 U.S.C. § 371 as a result of the hijacking of three trucks and their contents from John F. Kennedy Airport in violation of 18 U.S.C. § 659. Both appeals have arisen out of challenges by appellant's counsel to statements or sugges-

tions in the presentence reports that appellant has strong ties to organized crime and is a "made" member of the Gambino organized crime family.

## THE FACTS

Precipitating the first appeal, which was by the Government, was Judge Weinstein's holding that, although membership in and ties to organized crime are material facts to be considered in sentencing,[1] he would exclude as hearsay involving Due Process and Confrontation Clause limitations any evidence presented through an agent of the Federal Bureau of Investigation (FBI) from a reliable but confidential informer who was allegedly a member of the same New York organized crime "family." *United States v. Fatico,* 441 F.Supp. 1285 (E.D.N.Y. 1977). This court agreed that "[t]he Due Process Clause is plainly implicated at sentencing," *United States v. Fatico,* 579 F.2d 707, 711 (2d Cir. 1978) (*Fatico I*), but noted generally that it did not necessarily follow that Due Process required all the procedural safeguards and strict evidentiary limitations of the criminal trial itself. And we held specifically that *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), permitting reliance on hearsay information even though the defendant could not confront or cross-examine the witnesses who supplied the information, was still viable despite *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion), which held that Due Process guaranteed against the imposition of the death penalty on the basis of information not disclosed at all.[2] Thus we stated that

Due Process does not prevent use in sentencing of out-of-court declarations by an

---

* Of the Southern District of New York, sitting by designation.

1. This holding was based on 18 U.S.C. § 3577, which provides:

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Appellant did not challenge the materiality of information as to his links to organized crime on either the former appeal or this one.

2. We distinguished *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion), from *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), on the same ground as the Supreme Court itself noted in *Gardner*: the sentencing judge in *Williams* had disclosed the information, and the defendant had not challenged its accuracy, while the judge in *Gardner* had not even disclosed the information, and so the defendant could not challenge its accuracy. *United*

unidentified informant where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means. Thus, the trial court erred in excluding the agent's testimony about the informer's declaration once the Government represented that it would produce the specified corroboration.

579 F.2d at 713 (footnotes omitted). Accordingly, we reversed the district court's exclusion of the evidence and remanded the cause for sentencing proceedings, but at the same time specifically stated that "the weight given to the informer's declarations and the assessment of credibility are matters for the sentencing court." *Id.* at 713 n.14.[3]

On remand, the district court held an evidentiary sentencing hearing at which the

Government called ten witnesses, seven of whom were law enforcement agents (four with the FBI). The law enforcement officers' testimony indicated that seventeen different informers had told them that appellant and his brother were long-time, active members of the Gambino family. The Gambino family is one of the five active organized crime families operating in the greater New York City metropolitan area. There was also information to the effect that appellant was a "made" member, that is, one who has officially been initiated as a full-fledged member of the family, not born into it but not merely associated with it. Largely on the strength of this testimony,[4] which the court found "highly probative," *United States v. Fatico,* 458 F.Supp. 388, 412 (E.D.N.Y.1978), the court, after numerous holdings of law,[5] said: "While we must remain dubious of any conclusions based

States v. Fatico, 579 F.2d 707, 711–12 n.10 (2d Cir. 1978) (*Fatico I*). We also noted that to the extent, if any, that *Gardner* did limit *Williams,* the limitation applied only to capital cases, citing *Gardner,* 430 U.S. at 356, 359, 360, 363–64, 97 S.Ct. 1197, 51 L.Ed.2d 393, *Fatico I, supra,* 579 F.2d at 711–12 n.10.

We also relied upon various cases in the circuit courts sustaining the admission of hearsay where the defendant did not dispute the information, *United States v. Bass,* 175 U.S. App.D.C. 282, 292–293, 535 F.2d 110, 120–21 (1976), or other evidence "sufficiently corroborated" the hearsay information, *United States v. Needles,* 472 F.2d 652, 659 (2d Cir. 1973). *See also United States v. Weston,* 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). *Fatico I, supra,* 579 F.2d at 712–13.

3. This court did not express any views on the sentence to be imposed but did state that it did "not understand" the trial judge's statement that at stake was the difference between freedom and up to five years in prison. We believed that the proffered testimony on organized crime ties did not appear to alter significantly "the picture already on the record of the type of crime involved, the role of defendants as revealed at the trial and their prior conduct." *Fatico I, supra,* 579 F.2d at 714 n.17.

4. There was also testimony by one law enforcement officer that on more than one occasion he observed appellant with known members of organized crime. Two unindicted coconspirators, with extensive criminal records and under the Government's witness protection program, also testified as to the Fatico brothers' links to

the Gambino family. The trial judge largely disregarded this latter testimony, as he did the testimony that the brothers attended a closed wake for a Gambino family member and evidence of appellant's prior arrests on a variety of other charges, *United States v. Fatico,* 458 F.Supp. 388, 412 (E.D.N.Y.1978), none of which we fault.

5. The holdings included:

(1) Sentencing is a critical stage of the criminal process. 458 F.Supp. at 396.

(2) The purpose of the 1975 amendments to Fed.R.Crim.P. 32(c)(3)(A) (mandatory disclosure to defendant or his counsel of presentence reports) reflects the importance of reliable information as a basis for proper sentencing. 458 F.Supp. at 396–97.

(3) Due process does apply to sentencing, and the reliability of factual information is important to sentencing determinations. *Id.* at 397–98.

(4) Defendants lack protection because (a) *Fatico I, supra,* held that they cannot confront informers and (b) a line of cases in the Second Circuit, *see* note 8 *infra,* has held that defendants cannot obtain under 18 U.S.C. § 3500 prior statements of the law enforcement officials. *Id.* at 399–400.

(5) Defendants have an important liberty interest at sentencing, *id.* at 400, especially if they are treated as "special offenders" in the prison system, *see* text at notes 6–8 *infra. Id.* at 401–02.

(6) The burden of proof in these proceedings could run a continuum from a "preponderance" of the evidence, to "clear and convincing" evi-

upon hearsay, the Government's proof here meets the rigorous burden of 'clear, unequivocal and convincing evidence.' The probability is at least 80% that defendant is an active member of an organized crime family." *Id.*

The court then sentenced appellant to four years' imprisonment out of a maximum of five, 18 U.S.C. § 371, to run consecutive to a three-year sentence imposed in the Eastern District on a federal gambling charge, 78 Cr. 19–1 (E.D.N.Y.), a conviction now on appeal. Doing so, however, the court stated that "[w]ere it not for the organized crime issue, defendant would have been sentenced in the hijacking case to no more than a three year term, concurrent with the gambling sentence." 458 F.Supp. at 412. The court went to some length to point out how the organized crime characterization was very likely to have a number of serious ramifications for appellant in prison, including designation as a "special offender" [6] under Correction Authority and Parole Board decisions, with resultant confinement in a high security facility and ineligibility for certain rehabilitative programs, early parole,[7] and other privileges.[8] *See generally Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir. 1975).

We affirm the decision below imposing sentence by no means, however, endorsing all the rules of the district court.

dence, to "clear, unequivocal and convincing evidence," to "proof beyond a reasonable doubt," *id.* at 402–05, all of which may be numerically quantified in terms of probabilities. (7) Although the provisions in the Organized Crime Control Act of 1970 for sentencing "dangerous special offenders," note 6 *infra,* require proof of status only by a preponderance of the evidence, 458 F.Supp. at 406–07, where, as here, a higher sentence is based on proof of a fact not established in a criminal trial, proof should be by "clear, unequivocal and convincing evidence," which on a quantifiable scale of probability is "above 80%," *id.* at 408–12.

6. Distinguish a "dangerous special offender" under 18 U.S.C. § 3575(b), *see United States v. Bowdach,* 561 F.2d 1160, 1171 (5th Cir. 1977). The dangerous special offender may be subject to 25 years' imprisonment above and beyond his ordinary sentence.

## DISCUSSION

Appellant raises five points on appeal:

1. The court's admission of evidence based on information derived from undisclosed informers coupled with the Government's refusal to provide counsel with "3500" material, 18 U.S.C. § 3500, denied appellant due process.

2. Under *Fatico I, supra,* there was insufficient evidence to corroborate the information that the undisclosed informers supplied.

3. Under the trial court's "clear, unequivocal and convincing evidence" standard, there was insufficient evidence that appellant was a "made" member or an important figure in the upper echelons of the Gambino family.

4. The proper burden of proof was upon the Government and in any event was "beyond a reasonable doubt."

5. Appellant was entitled to Jencks Act or "3500" material, *viz.,* prior statements of the law enforcement agents testifying at the sentencing hearing.

■ The first point has been answered adversely to appellant in *Fatico I, supra,* and by the line of cases in note 8 *supra.*

■ On the second point there was more than ample evidence to corroborate under *Fatico I, supra,* 579 F.2d at 713, the information that the undisclosed informers

7. The district court pointed out that the "parole guidelines" for the gambling conviction were 12 to 16 months, 458 F.Supp. at 413, although it did not mention what they would have been for concurrent hijacking *and* gambling convictions.

8. The court also expressed some dissatisfaction with the decision in *Fatico I, supra,* and the line of decisions in this court holding that the Jencks Act, 18 U.S.C. § 3500, applies only at trial, *e. g., United States v. Sebastian,* 497 F.2d 1267 (2d Cir. 1974); *United States v. Percevault,* 490 F.2d 126 (2d Cir. 1974); *United States v. Covello,* 410 F.2d 536 (2d Cir.), *cert. denied,* 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969), as not in compliance with the "high standards of due process expected from this country's courts." 458 F.Supp. at 412. *See generally id.* at 399–400.

supplied. We suggested in *Fatico I* that sufficient reliability was apparent from corroboration by testimony of the two coconspirators, the nature of the crime itself (armed hijacking of valuable truck loads requiring sophisticated fencing through quasi-legitimate and criminal business groups, of which Judge Weinstein had earlier taken judicial notice, 441 F.Supp. at 1288), and in-court testimony of those who observed appellant and his brother associating with members of the Gambino family. Although Judge Weinstein rejected the testimony of the coconspirators as essentially unreliable, 458 F.Supp. at 412, and did not refer at all to the nature of the crime itself, he found "highly probative" the testimony of "seven different government agents, four of them from the FBI, relying on a total of seventeen independent informants." As he put it so well, "Even if one or several of these experienced agents miscalculated the reliability of an informant, the large number of agents and informants . . . greatly reduces the margin for error." *Id.* Appellant argues that quantity may not make up for quality of evidence. But under *Williams v. New York, supra,* as well as *Fatico I,* hearsay evidence is admissible if reliable. And although it is also possible that ten persons who have heard the same rumor may each be wrong, here we recognize that there are other independent facts, including personal observations and the nature of the crime itself, that go to corroborate the informers' statements.

■ The third argument is somewhat more pointed. Appellant argues that the evidence did not show that he was a "made" member of the Gambino family. According to the testimony appellant was one of some 1,100 "made" "soldiers" or "buttons" in the Gambino family. One of the informers, who a retired FBI agent testified was himself a "reliable, long active and highly placed member of the Gambino family," 458 F.Supp. at 392, told the agent on Easter Sunday 1978 that the Fatico brothers had been such members for over twenty years. There was much other testimony to the same effect as well as testimony that the Fatico brothers, operating with a crew of associates out of the Bergen Hunt and Fish Club in Ozone Park, New York, ran gambling, loan sharking, truck hijacking, and other illegal enterprises which are frequently a hallmark of organized crime.

■ On the fourth point, we do not agree that the burden of proof on the Government should be "beyond a reasonable doubt." Such a standard would turn sentencing hearings into second trials. As Judge Friendly said of sentencing hearings in *Hollis v. Smith,* 571 F.2d 685, 693 (2d Cir. 1978), although expressly noting Judge Weinstein's opinion leading to *Fatico I,* 441 F.Supp. 1285, "[t]here is no authority binding upon us which holds that the procedure in proceedings relating solely to punishment, even when an additional fact has to be established, must conform precisely to those in proceedings relating to guilt, and we see no basis in principle for so holding." We believe that *Fatico I, supra,* is a sufficient answer to appellant's fourth point.[9]

9. We note the Government's request, even though it did not file a cross-appeal, that we reject not only the burden of proof standard that the district judge utilized but also the entire concept of a hearing, which apparently is now called in the criminal bar a "*Fatico* hearing," in sentencing matters altogether. We decline as unnecessary to this decision to adopt any standard of proof or reject any standard except "proof beyond a reasonable doubt." And although we do not believe that a sentencing hearing will be necessary every time a defendant disputes facts or statements in the presentence report, we certainly would not hold it an abuse of discretion on the part of a district judge to hold such a hearing where there is reason to question the reliability of material facts having in the judge's view direct bearing on the sentence to be imposed, especially where those facts are essentially hearsay. Indeed, the statute permitting appeal from the suppression of evidence at a sentencing hearing, 18 U.S.C. § 3731, on which the Government relied in appealing in *Fatico I, supra,* recognizes that such a hearing may be required in some cases. The thrust of *United States v. Bass,* 175 U.S.App.D.C. 282, 292–293, 535 F.2d 110, 120–21 (1976), *United States v. Needles,* 472 F.2d 652, 659 (2d Cir. 1973) and *United States v. Weston,* 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), as well as of *Hollis v.*

The fifth point on this appeal in respect to the Jencks Act is in reality an attempt to have us overturn *United States v. Sebastian,* 497 F.2d 1267 (2d Cir. 1974), *United States v. Percevault,* 490 F.2d 126 (2d Cir. 1974), and *United States v. Covello,* 410 F.2d 536 (2d Cir.), *cert. denied,* 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969), something that we cannot do absent treatment of the issue en banc. *Compare United States v. Murphy,* 569 F.2d 771, 774 n.11 (3d Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978).

Judgment affirmed.

*Smith,* 571 F.2d 685, 695–96 (2d Cir. 1978), is to the same effect. The Government suggests that all that these cases—and *Fatico I*—mean is that the Government has the opportunity at such a hearing to "amplify" its information furnished, and not that the defendant must be given an opportunity to test that information by cross-examination. We cannot accept any such narrow view as a per se rule for the conduct of these hearings; we would have the same trouble with the proposed rule as Judge Weinstein had with our decision in *Fatico I, supra. See* note 8 *supra.*