**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ana Julia CORREA–TOBON,**
**Defendant-Appellant.**

No. 84–5328
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 17, 1984.

Raymond J. Takiff, Coconut Grove, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Isaac J. Mitrani, Linda Collins Hertz, Lee Stapleton, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

Defendant was convicted of conspiracy to possess cocaine with intent to distribute. Two agents testified that they were taken to defendant's home by a woman named Ana Isabel Correa (not the defendant, whose name is similar) to close a drug deal. They were introduced to defendant and all of them went into the kitchen. Defendant offered them a beer. She asked them how much cocaine they wanted. They told her six kilos, and she walked upstairs and returned with a small plastic bag containing white powder. One of the agents performed three chemical tests on the powder. Defendant told Ana Isabel to watch what the agent was doing because she "might learn something."

Defendant asked one of the agents for the money, and he said he would not bring money until he saw the cocaine. Defendant went upstairs and returned with a package wrapped in casting tape (the material used to wrap broken human bones). The agent opened the package and found it to contain a white powder that appeared to be cocaine. Defendant again went upstairs, this time returning with two more football size packages, and the agent determined that there was white powder in each of them. The agent told defendant that he would make a call and have money brought for three kilos. Defendant replied "we will do three kilos at a time." Defendant told one of the agents that the next drug transaction could be done in New York and that it would be easier than the one they were conducting.

The agent made his telephone call. While the four persons were waiting for the money to arrive a man came down from upstairs and entered the kitchen. He was introduced as Gil Sierra. He walked to the refrigerator and then left. A few minutes later defendant and Ana Isabel were arrested. Sierra was arrested, interviewed, determined to be an illegal alien, and turned over to the Immigration Service and deported to Colombia.

The agents obtained a search warrant. In the master bedroom upstairs they found two handguns on the night stand beside the bed. There were large shopping bags in the room filled with defendant's personal papers, including mail, bills and passports. In all, 500 to 600 documents belonging to defendant were found in the master bedroom. Five additional kilos of cocaine, all wrapped in tape, and similar to the first three packages that defendant had delivered, were found in a linen closet adjacent to the master bedroom. Also 280 rolls of casting tape were found in the closet of the master bedroom or in the linen closet.

Defendant moved to dismiss the indictment on the ground that the government violated her Fifth and Sixth Amendment rights by deporting Sierra, making him unavailable to her as a witness. The motion was filed before defendant testified. The asserted ground for the motion was that Sierra had been in the house, was an eyewitness, had been taken away from the house and deported, and that defendant had no opportunity to interview him. When defendant took the stand she testified that she did not participate in the events described by the agents as occurring in the kitchen but rather was elsewhere in the house and that she never went upstairs while Ana Isabel and the two agents were there. Later she referred to being in the living room watching tele-

vision. She testified that Sierra was upstairs packing his luggage, that "[she] was in one place and he was in another," that she was not upstairs with him at any time but was "in another place."

When the motion was made, before defendant testified, there was no proffer of what Sierra knew about the facts, what he would testify to, and how his testimony might affect or relate to the testimony of the defendant or of the other witnesses. The argument is now made that he was in position to know whether defendant went upstairs as described by the agents. But this theory was not made known to the trial judge. Defendant did not meet the "plausible showing" test of *U.S. v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

The court did not err in admitting into evidence the two handguns. While the two pistols were not in defendant's physical possession, they were on the night stand beside the bed in the master bedroom. Defendant testified that she did not occupy the master bedroom, but in view of the papers and documents found in it the jury could find to the contrary. The jury could infer that the guns were kept where they were to be available to protect the cocaine in the adjacent closet.

Sufficiency of the evidence, raised by motion at the close of the government's case, was waived by presentation of defense testimony and is meritless in any event. The claim of double jeopardy arising out of an earlier mistrial requested by defendant is not supported by any showing of government conduct in the first trial that would trigger double jeopardy. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The contention that the defendant was entitled to introduce evidence of good character through testimony of specific acts is frivolous.

The court did not err in its supplemental instructions given in response to a note from the jury.

At sentencing the government was permitted to present hearsay evidence of other criminal activities by the defendant, pursuant to *U.S. v. Fatico,* 603 F.2d 1053 (2d Cir.), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). Defendant asserts that this violated the Eighth Amendment. Assuming without deciding that this contention may be raised under the Eighth Amendment, it has no merit. The information was stated to come from confidential informants, the identities of some of whom could not be disclosed because of danger to their lives. Part of the information was verified by agents working on the case. In *U.S. v. Reme,* 738 F.2d 1156, 1167 (11th Cir.1984), an alien smuggling case, the district court imposed a sentence far out of proportion to that usually imposed for the offense, relying on hearsay testimony that the defendant had murdered two of the persons he was attempting to smuggle in to the United States. The hearsay testimony lacked any indicia of reliability and was contradicted by evidence that had been produced at trial. None of these circumstances is present in this case.

AFFIRMED.