11-1273-cr
United States v. Wolosz

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to summary orders filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of June, two thousand twelve.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> RAYMOND J. LOHIER, JR.,
>     *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
    *Appellee,*

     -v.-                                                No. 11-1273-cr

JOZEF WOLOSZ,
    *Defendant-Appellant.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR DEFENDANT-APPELLANT:**         JANEANNE MURRAY, New York, NY.

**FOR APPELLEE:**                         CRISTINA M. POSA (Amy Busa, Anthony M. Capozzolo, *of counsel*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of conviction of the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*) entered March 18, 2011.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-appellant Jozef Wolosz appeals a judgment of conviction entered on March 18, 2011, following his guilty plea, of one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349.

Wolosz was the president of Keystone Renovation Corp. ("Keystone"), a construction contractor located in Brooklyn, NY, that, under a subcontract agreement with MCR Restoration Corp., performed carpentry and other construction work on a project funded by the New York City Department of Housing Preservation and Development ("HPD") to build affordable housing at various sites in Brooklyn, NY, known as the Watkins Avenue Cluster. Under federal law (the Davis-Bacon Act, 40 U.S.C. § 3142) and state law (New York State Labor Law, Art. 8, § 220), Keystone was required to pay the so-called "prevailing wage."[1] While performing the subcontract work at the Watkins Avenue Cluster, Keystone paid its employees less than the prevailing wage, by requiring that employees give back a portion of their earnings to Wolosz and an associate of his. Wolosz then signed certified U.S. Department of Labor forms that falsely overstated the wages paid to Keystone employees.

On October 27, 2005, several Keystone employees filed a civil lawsuit in federal court against, among others, Keystone and Wolosz, alleging that they had been employed at various construction projections for which the defendants had failed to pay them the required prevailing wage (the "*Drej* lawsuit").

Thereafter, Wolosz and other defendants in the *Drej* lawsuit were indicted on charges of conspiracy to intimidate and retaliate against the plaintiffs in the lawsuit for the purpose of obtaining a more favorable money settlement of their claims. The indictment alleged that from April 2006 through October 2008, Wolosz and others "agreed to assault the plaintiffs to intimidate them and retaliate for the filing the *Drej* lawsuit." For example, as set forth in the complaint underlying the indictment, the government alleged that Wolosz paid Darius Lapinski $15,000 to engage in intimidation of the plaintiffs—a task Lapinski fulfilled in part by pouring acid on the back of the girlfriend of one of the plaintiffs in or around May 2006.

The government also alleged that Wolosz and four other co-defendants unwittingly engaged a cooperating witness to assault the plaintiffs in January 2008. In consensually-recorded conversations with the cooperating witness, several co-defendants outlined a scheme to have the plaintiffs and their lawyers beaten and hospitalized. Although Wolosz did not directly participate in these conversations, the co-defendants referred to their "boss" sanctioning the scheme.

On September 12, 2008, after the *Drej* lawsuit had settled, the cooperating witness met Wolosz in a consensually-recorded conversation. During the meeting, Wolosz advised that he was broke and could not pay the cooperating witness. Wolosz proposed that he pay the cooperating

---

[1] The "prevailing wage" is a minimum wage, determined by the Secretary of Labor to be prevailing for workers on similar projects in the same geographical area.

2

witness $7,000 for his efforts, and that the cooperating witness "collect" $15,000 from Lapinski based on Lapinski's failure to end the lawsuit earlier.

On September 20, 2010, Wolosz signed a plea agreement with the government in which he agreed to plead guilty to Count One of the Superseding Indictment—the wire-fraud conspiracy. The agreement addressed the application of the Sentencing Guidelines and set forth the government's estimate of a likely Guidelines range of 22, which carried a range of imprisonment of 41 to 51 months, assuming Wolosz would be sentenced within Criminal History Category I.

The agreement also explained that the government's estimate was not binding upon itself, the Probation Office, or the District Court, and that if the estimated offense level includes any errors, Wolosz "will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement." The government, in turn, agreed that it would "take no position concerning where within the Guidelines range determined by the Court the sentence should fall" and "make no motion for an upward departure under the Sentencing Guidelines."

Despite the estimate in the plea agreement based on the wire fraud conspiracy alone, the presentence report ("PSR") treated the obstruction/retaliation conspiracies as relevant conduct and thus calculated Wolosz's offense level at 29 and his Guidelines range at 87 to 108 months. The PSR added a two-level enhancement for "conscious or reckless risk of death and serious bodily injury," pursuant to U.S.S.G. § 2B1.1(b)(13)(A), on the basis that "the defendant hired several different individuals to intimidate, threaten, and injure the plaintiffs in the obstruction and retaliation conspiracies." The PSR added an aggravating four-level adjustment pursuant to U.S.S.G. § 3B1.1 because "the defendant was the organizer and leader of the wire fraud scheme, as well as the obstruction and retaliation conspiracies, which together involved five or more participants."

In its submission in response to Wolosz's objection to the PSR estimate, the government agreed with the Probation Office that a two-point enhancement under U.S.S.G. § 2B1.1(b)(13)(A) was appropriate, arguing that Wolosz's denial of his participation in the scheme to harm the plaintiffs "does not comport with the tone and content" of the recordings made by the cooperating witness. Nonetheless, the government took "no position as to whether or not the Court should apply this enhancement," as it "had not considered the applicability of this enhancement in the context of the wire fraud conspiracy" at the time of Wolosz's plea agreement.

On March 8, 2011, counsel for Wolosz sought a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to resolve disputed Guidelines issues. At the sentencing hearing on March 9, 2011, the District Court heard arguments on several guidelines issues. No *Fatico* hearing was held, however, because the District Court concluded, at the March 9, 2011 sentencing hearing, that there were no remaining factual issues in dispute requiring a *Fatico* hearing.

On March 10, 2011, the District Court issued an order providing notice to the parties of its intention to depart above the Guidelines, "based on the ground that the purpose of defendant's

3

efforts at intimidation, and later, retaliation, was to affect the victims' exercise of their right to access the courts for redress of the violations of their statutory rights." The District Court held a second sentencing hearing on March 18, 2011, at which it invited the parties to speak. The government noted that it was bound not to seek a sentence above 51 months, but spoke about Wolosz's alleged participation in the obstruction and retaliation conspiracy, and noted that Wolosz never would have been prosecuted if not for that participation.

In pronouncing the sentence on that date, the District Court added the two-level enhancement for conscious risk of death or serious bodily injury and the four-level enhancement for Wolosz's role as an organizer/leader. The District Court then calculated the applicable Guidelines range at 63 to 78 months, but imposed a sentence of 120 months, citing the seriousness of the offense, the necessity of promoting respect for the law, the need to provide just punishment, and the need for adequate deterrence. Specifically, the District Court noted that the Guidelines did not address the "unusual circumstances present here where the purpose of the defendant's efforts at intimidation . . . were to affect the workers' exercise of their right to access this very court," thus undermining "the whole purpose of our civil justice system."

Wolosz filed a timely notice of appeal.

## DISCUSSION

## I

Wolosz contends that the government breached its plea agreement with him by reneging on its estimate of the Guidelines calculation and inviting an upward departure in a written submission to the District Court and during oral arguments at sentencing by highlighting Wolosz's involvement in the obstruction/retaliation scheme.

"We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002). Plea agreements, however, are "unique contracts, and we temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards." *United States v. Granik*, 386 F.3d 404, 413 (2d Cir. 2004) (internal quotations omitted). Where, as here, the appellant failed to assert before the district court that the government had breached the plea agreement, we review for plain error only. *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal citations omitted) (outlining the burdensome plain error standard of review).

In this case, Wolosz falls far short of meeting the plain error standard. In the proceedings before the District Court, the government discussed the facts of the case but took "no position as to whether or not the Court should apply" any enhancements. The government's statements at sentencing were consistent with its obligation under the plea agreement to "advise the Court . . . of information relevant to sentencing."

4

## II

Wolosz contends that the District Court's determination that he qualified for a four-level organizer/leader role enhancement under U.S.S.G. § 3B1.1(a) of the Guidelines was in error.

We review a district court's determination that a defendant deserves a leadership enhancement pursuant to U.S.S.G. § 3B1.1 *de novo* and the district court's findings of fact supporting its conclusions for clear error. *See United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009).

In this case, the District Court properly applied § 3B1.1(a) to impose an organizer/leader role and its factual findings are supported by the record. At sentencing, the District Court found, and both parties agreed, that the obstruction/retaliation conspiracy constituted relevant conduct. *See* U.S.S.G. Ch. 3, Pt. B, intro. cmt. ("The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the count of conviction."). In finding that Wolosz satisfied the organizer/leader prong of § 3B1.1(a), the District Court relied on the fact that Wolosz had a financial stake in both the wire fraud and the obstruction/retaliation conspiracies and that he paid and directed the other participants in those schemes—conduct that is relevant in distinguishing between a leader and a supervisor under the Guidelines, *see* U.S.S.G. § 3B1.1, cmt. 1, n.4.

## III

Wolosz contends that there was a dispute regarding whether he intended to harm the victims of the obstruction/retaliation scheme and that, as a result, the District Court committed a procedural error in not holding a sentencing hearing to resolve the factual dispute pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

We review a district court's factual findings underlying an enhancement pursuant to U.S.S.G. § 2B1.1(13)(A) for committing a fraud involving "the conscious or reckless risk of death or serious bodily injury" for clear error. *See United States v. Feldman*, 647 F.3d 450, 464 (2d Cir. 2011). The district court is required to resolve any factual disputes as to the proper application of any Guidelines enhancement. *See, e.g., United States v. Maturo*, 982 F.2d 57, 62 (2d Cir. 1992). In order for the § 2B1.1(13)(A) enhancement to apply, the risk of bodily injury—not the specific type of injury— must have been known to the defendant or, if unknown to the defendant, the risk of bodily injury must have been the "type of risk that is obvious to a reasonable person and for which disregard of said risk represents a gross deviation from what a reasonable person would do." *United States v. Lucien*, 347 F.3d 45, 56–57 (2d Cir. 2003).

The District Court did not err in applying the two-level enhancement pursuant to § 2B1.1(13)(A) without first holding a *Fatico* hearing because Wolosz did not dispute that "violence was contemplated" in hiring Lapinski to intimidate the plaintiffs in the *Drej* lawsuit. The District Court accepted for purposes of sentencing, without any objection from the parties, that Wolosz "didn't know a particular worker and worker's girlfriend would be the subject of this," but that he

"[i]ndisputably . . . hired someone to inflict violence for the purpose of intimidating his workers and obtaining a favorable money settlement of their claims." Whether Wolosz could have foreseen the specific consequences that resulted from his actions—namely, that Lapinski would pour acid on a plaintiff's girlfriend—was irrelevant to the District Court's sentencing determination.

## IV

Finally, Wolosz contends that the District Court erred in imposing an above-Guidelines sentence of 120 months' imprisonment. Specifically, Wolosz argues that the District Court committed procedural error because it relied on facts already incorporated into the Guidelines range, and that the sentence was substantively unreasonable because the District Court's justification for departure was insufficiently compelling.

We review a district court's sentencing determination under a deferential "abuse of discretion" standard. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 41, 51 (2007); *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining the term of art "abuse of discretion"). A sentence must be procedurally and substantively reasonable. *Gall*, 552 U.S. at 51.

### A

A sentence is procedurally unreasonable if a district court committed a "significant procedural error," such as improperly calculating the guidelines range, failing to consider the factors set forth in 18 U.S.C. § 3553(a), or selecting a sentence based on clearly erroneous facts. *Gall*, 552 U.S. at 51.

In this case, the sentence was procedurally reasonable because the District Court fully explained its rationale for an upward departure from the Guidelines, including its analysis of the factors set forth in 18 U.S.C. § 3553(a) and the reasons why certain critical facts were not captured by the Guidelines. The District Court concluded that an above-Guidelines sentence was necessary because of the unique nature of the obstruction/retaliation conspiracy and the threat that it posed to the civil justice system, a factor that, the District Court properly concluded, is not captured anywhere in the Guidelines.

### B

A sentence is substantively unreasonable only in "exceptional cases," where the district court's decision is beyond "'the range of permissible decisions.'" *Cavera*, 550 F.3d at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). In the case of an upward departure, the key inquiry is not simply the numerical difference between the sentence and the Guidelines range, but rather, "whether a factor relied on by a sentencing court can bear the weight assigned to it." *Id.* at 191. When reviewing the weight assigned to any particular factor, we do not "consider what weight we would ourselves have given a particular factor," but rather "consider whether a factor, relied on by a sentencing court, can bear the weight assigned it." *Id.*

Under this standard, the sentence in this case was substantively reasonable. The District Court relied heavily on the chilling effect that Wolosz's conduct could have on the civil justice system and elaborated at length about Wolosz's objective to curtail the access of vulnerable immigrant plaintiffs to the courts—conduct that it could well conclude strikes at the heart of the judicial system. In light of this reasoning, which was amply supported by the record, we have no difficulty holding that the District Court's determination was substantively reasonable.

## CONCLUSION

We have considered all of Wolosz's arguments on appeal and find them to be without merit. For the reasons stated above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk