USA v. Lobo

# In the
# United States Court of Appeals
## for the
# Second Circuit

August Term, 2018

(Argued:  August 23, 2018            Decided: September 20, 2018)

Docket No. 17-2894-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

LUDWIG CRISS ZELAYA ROMERO,
MARIO GUILLERMO MEJIA VARGAS,
JUAN MANUEL AVILA MEZA,
CARLOS JOSE ZAVALA VELASQUEZ,
VICTOR OSWALDO LOPEZ FLORES,
JORGE ALFREDO CRUZ CHAVEZ,
CARLOS ALBERTO VALLADARES ZUNIGA,

*Defendants,*

FABIO PORFIRIO LOBO, AKA
FABIO PORFIRIO LOBO LOBO, AKA
FABIO LOBO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of New York (Schofield, *J.*) No. 15-174

_____

Before:

PARKER, HALL, LOHIER, *Circuit Judges.*


      Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*) sentencing Defendant-Appellant Fabio Porfirio Lobo to 288 months of imprisonment pursuant to his guilty plea for conspiracy to manufacture and distribute, and to import into the United States, five or more kilograms of cocaine. We hold principally that the district court did not err in applying the enhancement under U.S.S.G. § 2D1.1(b)(15)(C) to calculate Lobo's Guidelines score, properly determining that Lobo's drug-related activity outside the United States constituted "direct[] involve[ment] in the importation of a controlled substance." AFFIRMED.

                       MANUEL RETURETA, Retureta & Wassem, PLLC, Washington, DC, *for Defendant-Appellant*.

                       EMIL J. BOVE III, Assistant United States Attorney (Matthew Laroche and Karl Metzner, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.


PER CURIAM:

      Defendant-Appellant Fabio Porfirio Lobo ("Lobo") appeals from a sentence imposed pursuant to a judgment entered in the United States District Court for the Southern District of New York (Schofield, *J.*). Lobo pleaded guilty to one count of conspiracy to manufacture and distribute, and to import into the United States, five or

more kilograms of cocaine, in violation of 21 U.S.C. § 963.[1]   He was sentenced to 288 months of imprisonment to be followed by five years of supervised release.   Lobo argues that the district court erred in finding that he was "directly involved in the importation of a controlled substance" cognizable under U.S.S.G. § 2D1.1(b)(15)(C) because none of his acts physically occurred in the United States and because the government failed to demonstrate that the shipments of cocaine he was involved with transporting were actually delivered to the United States.   We write here to address the application of U.S.S.G. § 2D1.1(b)(15)(C).   In a summary order filed simultaneously with this opinion, we write separately to address Lobo's remaining arguments.[2]

We hold that the district court did not err in applying the section 2D1.1(b)(15)(C) enhancement to its Guidelines calculation.   Lobo specifically pleaded guilty to conspiracy to import cocaine, and the government presented sufficient evidence to show that Lobo participated directly in transporting hundreds of kilograms of cocaine from South America through Honduras for Mexican drug cartels to smuggle into the United States.

---

[1]  Although the Grand Jury did not charge the actual commission of violations of 21 U.S.C. §§ 952 (importation), 959 (manufacture and distribution) and 960 (penalty provisions therefor), it did charge that the object of the conspiracy was the commission of those substantive offenses.

[2]  Lobo's remaining arguments amount to challenges to the procedural and substantive reasonableness of his sentence.

3

## I.  BACKGROUND

Lobo is the son of a former President of Honduras.  During the relevant time, Lobo used his position to offer security and assistance to the "Cachiros," a violent drug trafficking organization, in its distribution of large quantities of cocaine from South America to the United States through Honduras on behalf of Mexican drug-traffickers. On May 16, 2016, Lobo pleaded guilty to a one-count indictment charging him with conspiracy to manufacture and distribute, and to import into the United States, five or more kilograms of cocaine, in violation of 21 U.S.C. § 963.

### A.  *Fatico* Hearing

After pleading guilty, the parties requested an evidentiary hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).  Lobo objected to several of the government's proposed sentencing enhancements, including the two-level enhancement provided for in section 2D1.1(b)(15)(C).

The government's sole witness at the *Fatico* hearing was Devis Leonel Rivera Maradiaga ("Rivera Maradiaga").   Between 2009 and December 2013, Rivera Maradiaga and his brother were the leaders of the Cachiros, which was responsible for the distribution of approximately 20 metric tons of cocaine bound for the United States. Rivera Maradiaga testified that after Lobo's father, Porfirio Lobo Sosa ("Sosa"), became president of Honduras in 2010, Sosa "assigned" Lobo to act as the "security person for the Cachiros drug trafficking organization[.]"   D.E. 137 at 58.   On several occasions

4

from 2010 to 2013, Rivera Maradiaga provided Lobo advanced notice of incoming cocaine shipments so that Lobo could provide security and logistical support. On at least two occasions, Lobo investigated possible landing sites within Honduras for the Cachiros to receive drug shipments from South America. Lobo also provided security and logistical support to the Cachiros during two multi-hundred-kilogram shipments of cocaine. Rivera Maradiaga compensated Lobo with tens of thousands of dollars in cash, a Mitsubishi Lancer, and an AR-15 rifle.[3]

In December 2013, Rivera Maradiaga began cooperating with U.S. law enforcement. As part of his cooperation, Rivera Maradiaga recorded several conversations with Lobo, during which Lobo agreed to provide security and "logistics" support for large shipments of cocaine.

## B. The District Court's Decision

After the conclusion of the *Fatico* hearing, the district court made findings of fact and conclusions of law. *See United States v. Lobo*, No. 15-cr-174 (LGS), 2017 WL 2838187 (S.D.N.Y. June 30, 2017). The district court found Rivera Maradiaga "credible in light of

---

[3] Rivera Maradiaga also testified that he paid Lobo to give him information to prevent the Honduran government from seizing the Cachiros's assets. In 2013, pursuant to the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq.*, the United States Department of the Treasury, Office of Foreign Assets Control identified the Cachiros and Cachiros-affiliated entities as significant foreign narcotics traffickers and imposed sanctions on Rivera Maradiaga and his brother. Thereafter, Rivera Maradiaga sought help from Lobo to prevent the Honduran Oficina Administradora de Bienes Incautados ("OABI") from seizing the Cachiros's assets. In exchange for between $50,000 and $70,000, Lobo gave Rivera Maradiaga a list of assets and properties the OABI planned to seize from the Cachiros.

5

the entirety of the record and observations of his tone, demeanor and straightforward answers." *Id.* at *2. The court reasoned further that:

> Although Rivera [Maradiaga]'s testimony was the sole source of direct evidence for some conduct, some of his statements are undisputed and others are bolstered by other evidence. It is undisputed that Defendant participated in meetings with Honduran officials in which they discussed a maritime drug-trafficking venture for which Defendant received approximately $50,000. The recordings made while Rivera [Maradiaga] was cooperating with the DEA also corroborate his testimony about Defendant's prior role in the conspiracy; in those recordings, Rivera [Maradiaga] and Defendant discuss Defendant's providing security and escorting the cocaine shipment "just like the previous times."

*Id.* The district court acknowledged that Lobo conceded his participation in transporting hundreds of kilograms of cocaine, and he did not object "to the Government's proposed findings of fact (based on Rivera [Maradiaga]'s testimony) regarding Lobo's involvement in a 400-kilogram shipment in 2012 and a 1,000-kilogram shipment in 2013." *Id.*

The district court held that a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(15)(C) was warranted because Lobo played an aggravating role in the offense and was directly involved in two large shipments of cocaine bound for the United States. *Id.* at *4. The court accepted Rivera Maradiaga's testimony that "the cocaine shipped by the Cachiros was distributed to the United States." *Id.*

**C. Sentencing**

The district court determined that Lobo's total offense level was 42, reflecting: (i) a base offense level of 38; (ii) a combined seven-level enhancement based on the district court's findings following the *Fatico* hearing, *see* U.S.S.G. §§ 3B1.1(b), 2D1.1(b)(15)(C), and 2D1.1(b)(1); and (iii) a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a). With Lobo in Criminal History Category I, the result was a Guidelines range of 360 months to life imprisonment.

Notwithstanding the Guidelines range, the district court sentenced Lobo to 288 months of imprisonment, a $50,000 fine, and a $266,667 forfeiture judgment. Applying the 18 U.S.C. § 3553(a) factors, the district court emphasized the need to achieve general deterrence and to avoid unwarranted sentencing disparities, and stated:

> The most damning fact in your background and in your participation in this is that you are not like the police officers who have made plea agreements with the government for a much less amount of time in prison. You were the son of the sitting president of Honduras, and you used your connections, your reputation in your political network to try to further corrupt connections between drug traffickers and Honduran government officials. And these included not only lowly officials, like customs people and military and law enforcement personnel, but also extremely high level officials. In short, what distinguishes your case from so many is that you facilitated strong government support for a large drug trafficking organization for multiple elements of the Honduran government, and you enriched yourself in the process.

J. App. 215. Lobo did not object or ask the district court to explain further its sentencing decision.

## II.  DISCUSSION

Lobo argues that the district court erred in applying the section 2D1.1(b)(15)(C) enhancement because the government failed to demonstrate that he was directly involved in importing cocaine into the United States.   He contends that because he was neither physically present in the United States nor "directly" involved in smuggling cocaine across the United States border, section 2D1.1(b)(15)(C) does not apply. Appellant's Br. at 30—31.   We review "a district court's application of the Guidelines *de novo*, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error."   *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015).

Section 2D1.1(b)(15)(C) adds two levels to a defendant's base offense level if (1) "the defendant receives an adjustment under § 3B1.1 (Aggravating Role)"—an element that is not in dispute here—and (2) "the defendant was directly involved in the importation of a controlled substance."   U.S.S.G. § 2D1.1(b)(15)(C).   The accompanying commentary provides: "Subsection (b)(15)(C) applies if the defendant is accountable for the importation of a controlled substance under subsection (a)(1)(A) of § 1B1.3 . . . , i.e., the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the importation of a controlled substance."   *Id.* comment. (n.20(B)).

Arguing against the application of this enhancement, Lobo contends that the language of section 2D1.1(b)(15)(C) is unambiguous and yields only one interpretation— that an enhancement is warranted where a defendant who receives an Aggravating Role

adjustment "either himself brought controlled substances into the United States or induced another [to] do so, or secreted/transported such substances at some point after their arrival in the United States but before they reached their final destination." Appellant's Br. at 33. He thus claims that we need not look to the commentary to resolve the meaning of "directly involved" because the language of section 2D1.1(b)(15)(C) is unambiguous.

We disagree. It is well established that "the commentary is binding authority, unless it is inconsistent with the underlying guideline." *United States v. Pedragh*, 225 F.3d 240, 244 (2d Cir. 2000) (internal quotation marks omitted). We have long recognized that, "[n]o threshold test of ambiguity need be passed before the commentary can be consulted," and we will instead "construe the guideline and its commentary together and seek to harmonize them." *Id.* at 244—45.

With this principle in mind, there is no question that, at a minimum, Lobo "aided" and "abetted . . . the importation of" cocaine, regardless of whether he was physically present in the United States or personally transported cocaine across the border. U.S.S.G. § 2D1.1(b)(15)(C) comment. (n.20(B)). Lobo specifically pleaded guilty to conspiracy to import cocaine into the United States. The government's evidence demonstrated that Lobo participated directly in transporting hundreds of kilograms of cocaine from South America through Honduras for Mexican drug cartels to smuggle into

the United States.    This conduct clearly falls within the conduct identified by the text of the commentary when read in concert with the Guideline.

Lobo cites a number of unpublished decisions from our sister circuits and argues that "each involved defendants physically present in the United States and/or involved in an affirmative step related to the controlled substance crossing over the border of the United States."    Appellant's Br. at 31.    None of these decisions confronted the argument Lobo presents before this Court, and none foreclose the interpretation of section 2D1.1(b)(15)(C) that the district court applied and that we uphold here.

Finally, we are not persuaded by Lobo's argument that the government presented insufficient evidence that the cocaine at issue was ultimately imported into the United States.    At the *Fatico* hearing, Rivera Maradiaga testified that the Cachiros worked with Mexican drug cartels to smuggle drugs into the United States by transporting drugs from Colombia through Honduras into Guatemala.    J. App. 57 ("From Colombia it was sent to Honduras, from Honduras it was sent to Guatemala, from Guatemala it was sent to Mexico, and from Mexico to the United States.").

Rivera Maradiaga also explained that Lobo was not a passive participant.    For example, in 2012, Lobo helped Rivera Maradiaga escort approximately 400 kilograms of cocaine received from Colombian drug traffickers via a landing strip in the Cortés Department of Honduras to San Pedro Sula, Honduras.    Lobo ensured the safe passage of the drugs by contacting the local police chief to prevent any police interference during

10

the transport. In 2013, Lobo assembled a security team to assist Rivera Maradiaga in moving approximately 1,000 kilograms of cocaine from Tocoa Colón, Honduras to La Entrada, Honduras. Lobo used three SUVs with sirens occupied by men wearing military uniforms to escort the truck carrying the drugs. At a police checkpoint, Lobo spoke with police officers so that the truck could pass through unimpeded.[4] On these facts, the district court reasonably concluded that the government established by a preponderance of the evidence that Lobo "aided [and] abetted . . . the importation of a controlled substance" into the United States. U.S.S.G. § 2D1.1(b)(15)(C) comment. (n.20(B)). There was no error in its application of the importation Guideline.

We have considered Lobo's arguments and find them to be without merit. For the foregoing reasons, and those stated in the summary order filed concurrently herewith, we **AFFIRM** the judgment of the district court.

---

[4] The Presentence Report ("PSR") also identifies an incident when Lobo was paid $50,000 to introduce members of Mexico's Sinaloa Cartel to Honduran customs officials to facilitate the transport of hundreds of kilograms of cocaine bound for the United States through Honduras.