United States v. Diamreyan

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued:   November 9, 2011                                     Decided: July 3, 2012 )

Docket No. 10-3575

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

OKPAKO MIKE DIAMREYAN,

*Defendant-Appellant*.

_____

Before: POOLER, PARKER, and LOHIER, *Circuit Judges*.

        Okpako Mike Diamreyan appeals from the September 2, 2010 judgment of the United States District Court for the District of Connecticut (Hall, *J.*) sentencing him to a term of 151 months' imprisonment following his conviction on three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2.  The district court concluded, based in part on email exchanges, that Diamreyan (1) was a manager or supervisor of at least one other participant in the scheme, and (2) that the overall criminal activity involved five or more participants. We hold that district courts may rely on unique email addresses in assessing a defendant's role in a scheme and calculating the number of participants for sentencing purposes.

        Affirmed.

_____

JONATHAN J. EINHORN, New Haven, CT, *for Defendant-Appellant Okpako Mike Diamreyan.*

EDWARD CHANG, Assistant United States Attorney (David B. Fein, United States Attorney for the District of Connecticut, Sandra S. Glover, Assistant United States Attorney, *on the brief*), New Haven, CT, *for Appellee the United States of America.*

PER CURIAM:

Okpako Mike Diamreyan appeals from a September 2, 2010 judgment of the United States District Court for the District of Connecticut (Hall, *J.*) convicting him of three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1342 sentencing him to a term of 151 months' imprisonment. Relying in part on emails exchanged with Diamreyan, the district court found that (1) Diamreyan acted as a manager of at least one other participant in the scheme, and (2) the overall criminal activity involved five or more participants. Accordingly, the district court increased Diamreyan's offense level by three. U.S.S.G. §3B1.1(b) & n.2. On appeal, Diamreyan challenges those factual determinations, which the district court based primarily on emails between Diamreyan and others involved in the scheme. Because those determinations were not clearly erroneous, we affirm.

## BACKGROUND

On November 23, 2009, Diamreyan was indicted on three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1342. The indictment charged Diamreyan with participating in an advance-fee scheme, wherein the victim is persuaded to pay a sum of money up front in order to receive a larger sum of money (or some other valuable asset) at a later point in time.

The evidence at trial demonstrated that Diamreyan used the email account address "milkymyx@yahoo.com" for approximately 10 years, and that he had exclusive access to that

2

account until some time at the end of 2008. Among the email messages sent to and from that account were (1) emails soliciting potential victims; and (2) emails concerning current and potential victims. Diamreyan's wife, Martine Janvier, testified that she met her husband in 2003 via the Internet, and he used the "milkymyx@yahoo.com" email address at that time. Janvier testified that after being interviewed by law enforcement, she obtained access to her husband's email account in 2009, and observed he had scam letters in the account.

In connection with a *Fatico* hearing following conviction, *see generally United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), the government submitted the sworn declaration of Defense Criminal Investigative Service Special Agent Christopher Mehring, which included documentary evidence of emails between Diamreyan and his accomplices, telephone records, Western Union and Moneygram records, and transcripts of Internet chats -- evidence the district court found "extremely credible." Mehring testified that, as is typical in advance-fee schemes, victims of the scheme were instructed to make payments to different individuals to make the scheme more realistic. "[I]n order to properly work a specific victim," Mehring testified, Diamreyan exchanged information about the victims with others involved in the scheme.

At sentencing, the district court found that:

> Mr. Diamreyan and his fellow schemers would exchange names, e-mail addresses, and phone numbers of potential victims or victims who had already been a victim and could be revictimized or in the trade I think the proper expression is reloading the victim.
>
> At times this appears and it is I think the court's finding to have been very coordinated activity between and among the people who were part of this scheme that Mr. Diamreyan joined in. Where one person, for example, would close a deal. In other words, extract money from the victim that another person had started. In other words, made the initial contact, played a particular role, then turned over the fraud to a second person or even more people to play different roles and to close the scheme.

3

The district court also determined there were five or more participants involved in the scheme, noting "[w]e may not exactly [know] who they are but we know they are individuals who are identified by e-mail names or addresses, things of that sort." Finally, the district court found Diamreyan had a managerial role, as "he would advise other co-schemers of how to approach a victim, what to say, what role to play, he would provide names as well as receive names of victims to reload or new victims."

The district court calculated a Guidelines offense level of 34, with a criminal history category of I, resulting in a recommended Guidelines range of 151 to 188 months' imprisonment. The district court sentenced the defendant to 151 months in prison, three years of supervised release, restitution in the amount of $1,021,560.74 and a mandatory special assessment of $300 . This appeal followed.

## DISCUSSION

"We are constrained to review sentences for reasonableness, and we do so under a deferential abuse-of-discretion standard," *United States v. Conca*, 635 F.3d 55, 62 (2d Cir. 2011) (internal quotation marks and citation omitted). We examine sentences for both substantive and procedural reasonableness, *id*., setting aside a sentence as substantively unreasonable "only in those special cases where the range of permissible decisions does not encompass the District Court's determination." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). A sentence is procedurally unreasonable when:

> the district court (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation.

4

*Id.* We review the district court's findings of fact at sentencing for clear error, and its application of the Guidelines de novo. *Conca*, 635 F.3d at 62.

Diamreyan attacks the district court's findings that he played a managerial role and that the scheme involved five or more participants because the district court based its findings, in part, on emails exchanged between Diamreyan and other participants in the scheme. He argues that unique email addresses alone are insufficient to establish that there were other participants in the scheme, because the government did not prove to whom those email addresses belonged. Diamreyan even argues that he could have exchanged the emails with himself, using different email addresses.

A district court may increase the defendant's offense level by three points "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). "The requirements of § 3B1.1(b) are met if the defendant was a manager or supervisor and the criminal activity itself involved at least five participants; the defendant need not be the manager of more than one other person." *United States v. Payne*, 63 F.3d 1200, 1212 (2d Cir. 1995). "[E]vidence of a defendant's direct and immediate control over other participants provides strong support for a role enhancement." *United States v. Al-Sadawi*, 432 F.3d 419, 426 (2d Cir. 2005). "A defendant may properly be considered a manager or supervisor if he exercised some degree of control over others involved in the commission of the offense." *Id.* (internal quotations, alterations and citation omitted).

Here, the record supports the district court's finding that Diamreyan played a managerial role in the scheme. Two different participants in the scheme called him "chairman," and, more importantly, the emails include instructions to participants on sending emails, creating fake

5

websites, calling victims and -- on one occasion -- cleaning Diamreyan's room in preparation for his return from Ghana.

With regard to the number of participants, we join the Seventh Circuit in holding that "[p]articipants need not be identified by actual name in order for a supervisory enhancement to apply," so long as the record allows the district court reasonably to find the existence of other participants in the scheme. *United States v. Harper*, 463 F.3d 663, 669 (7th Cir. 2006). In *Harper*, the Seventh Circuit determined record testimony that a fifth participant named "T" existed, even though there was no evidence in the record to indicate "T['s]'" actual name, sufficed. *Id.* Here, the emails contained in the record and relied on by the district court provide sufficient unique indicia to support the district court's conclusion that there were five or more participants, counting Diamreyan and his wife as two. The emails were from unique email addresses for Festus 98, Sweetest Joe Joe, and John Blessed One. Emails and internet chat communications from the defendant to those email handles provided instructions as to how to proceed with various components of the scheme, including sending emails to victims and potential victims and creating fake websites for banks. It was not clearly erroneous for the district court to conclude these emails were generated by people other than the defendant.

We have examined the remainder of Diamreyan's arguments and find them to be without merit for the reasons set out by the district court in its denial of Diamreyan's motion for judgment of acquittal, *United States v. Diamreyan*, No. 09 Cr. 0260, 2010 WL 1539874 (D. Conn. Apr. 16, 2010), and as stated by the district court at the sentencing hearing held on September 1, 2010. Accordingly, the judgment of the district court is AFFIRMED.