23-6141-cr

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2024

(Argued: September 27, 2024   Decided: January 24, 2025)

No. 23-6141

_____

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, A/K/A HENRIY OGBUOKIRI,
JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIMA DOUKOURE,
JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, GARNET
STEVEN MURRAY-SESAY, A/K/A STEVEN GARNET MURRAY-SESAY, ANDREW HEAVEN,
MUHAMMED BASHORUN, A/K/A SEALED DEFENDANT 1,

*Defendants,*

OLADAYO OLADOKUN, A/K/A SEALED DEFENDANT 1,

*Defendant-Appellant.*

_____

Before:          BIANCO, MENASHI, and LEE, *Circuit Judges.*

Defendant-Appellant Oladayo Oladokun appeals from a judgment of conviction entered on February 7, 2023, in the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*), following his guilty plea to conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h). On appeal, Oladokun challenges the district court's calculation of his offense level under the United States Sentencing Guidelines, arguing that the district court erred in applying an eighteen-level enhancement based on the loss amount, a two-level enhancement for ten or more victims, and a four-level enhancement for Oladokun's role in an offense involving five or more participants. Oladokun additionally argues in his *pro se* supplemental brief that defense counsel was ineffective for failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), when moving to suppress evidence seized from his residence pursuant to a search warrant.

We conclude that the district court did not err in determining that there was a sufficient factual basis in the record to support each of the challenged Guidelines enhancements. We further hold that Oladokun's ineffective assistance claim is without merit. Even assuming *arguendo* that his counsel was ineffective for failing to request a *Franks* hearing with respect to surveillance evidence in the search warrant application that Oladokun asserts was false, he has failed to show the requisite prejudice to prevail on his ineffective assistance claim because he does not challenge the district court's finding that the warrant application was supported by probable cause even without the challenged evidence.

Accordingly, we **AFFIRM** the judgment of the district court.

Judge Menashi concurs in part and concurs in the judgment in a separate opinion.

<div style="margin-left:40%">

FOR APPELLEE: ALEXANDER LI, Assistant United States Attorney (Thomas S. Burnett and Hagan Scotten, Assistant United States Attorneys, *on the brief*), *for* Danielle R. Sassoon, Interim United States Attorney for the Southern District of New York, New York, New York.

FOR APPELLANT: B. ALAN SEIDLER, ESQ., New York, New York.

</div>

JOSEPH F. BIANCO, *Circuit Judge*:

Defendant-Appellant Oladayo Oladokun appeals from a judgment of conviction entered on February 7, 2023, in the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*), following his guilty plea to conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h). Oladokun's convictions arose from his participation in a fraud and money-laundering scheme in which Oladokun directed others to open bank accounts that then received stolen or forged checks or were used to launder money from stolen or forged checks. Oladokun was sentenced principally to 125 months' imprisonment, to be followed by three years' supervised release.

On appeal, Oladokun challenges the district court's calculation of his offense level under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), arguing that the district court erred in applying an eighteen-level enhancement based on the loss amount, a two-level enhancement for ten or more victims, and a four-level enhancement for Oladokun's role in an offense involving five or more participants. Oladokun additionally argues in his *pro se* supplemental brief that defense counsel was ineffective for failing to request a hearing under

3

*Franks v. Delaware*, 438 U.S. 154 (1978), when moving to suppress evidence seized from his residence pursuant to a search warrant.

We conclude that the district court did not err in determining that there was a sufficient factual basis in the record to support each of the challenged Guidelines enhancements. We further hold that Oladokun's ineffective assistance claim is without merit. Even assuming *arguendo* that his counsel was ineffective for failing to request a *Franks* hearing with respect to surveillance evidence in the search warrant application that Oladokun asserts was false, he has failed to show the requisite prejudice to prevail on his ineffective assistance claim because he does not challenge the district court's finding that the warrant application was supported by probable cause even without the challenged evidence.

Accordingly, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

On August 18, 2022, the grand jury returned a second superseding indictment charging Oladokun with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h).

4

On September 8, 2022, Oladokun pleaded guilty to both counts without a plea agreement with the government. In advance of sentencing, the United States Probation Office prepared the Presentence Investigation Report ("PSR"), which determined that Oladokun's offense level under the Guidelines was 35, based upon the following: (1) a base offense level of seven, pursuant to U.S.S.G. § 2B1.1(a)(1); (2) an eighteen-level enhancement for an intended loss of $4,178,501, pursuant to U.S.S.G. § 2B1.1(b)(1)(J); (3) a two-level enhancement for 10 or more victims, pursuant U.S.S.G. § 2B1.1(b)(2)(A)(i); (4) a two-level enhancement for Oladokun's intentional use of sophisticated means to commit the offense, pursuant to U.S.S.G. § 2B1.1(b)(10)(C); (5) a two-level enhancement because the offense involved the possession of five or more means of identification that were unlawfully produced from, or obtained by the use of, another means of identification, pursuant to U.S.S.G. § 2B1.1(b)(11)(ii); (6) a four-level enhancement because Oladokun was an organizer or leader of the conspiracy, pursuant to U.S.S.G. § 3B1.1(a); (7) a two-level enhancement for money laundering, pursuant to U.S.S.G. § 2S1.1(b)(2)(B); and (8) a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). With an offense level of 35 and a

Criminal History Category of V, the Probation Office calculated Oladokun's advisory Guidelines range to be 262 to 327 months' imprisonment.

At the sentencing hearing held on February 1, 2023, after Oladokun raised several legal and factual objections to the Guidelines calculation, the district court conducted a hearing, pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to resolve the disputed fact issues. During that hearing, the government offered, without objection, numerous exhibits relevant to the disputed issues— including bank and business records and text messages from Oladokun's cellphone—while Oladokun presented no evidence and made no new arguments in response to the government's evidence. Following the presentation of evidence, the district court rejected all of Oladokun's objections and adopted the Guidelines calculation set forth in the PSR, which resulted in a Guidelines range of 262 to 327 months' imprisonment. The district court then sentenced Oladokun principally to a term of 125 months' imprisonment, to be followed by three years' supervised release. This appeal followed.

## II.    DISCUSSION

### A. Loss Amount Under Section 2B1.1(b)(1)

Oladokun argues that the district court erroneously considered the intended loss amount, rather than the actual loss amount, when applying an eighteen-level

enhancement for loss under U.S.S.G. § 2B1.1(b)(1)(J). "We review a district court's application of the guidelines *de novo*, but factual determinations are reviewed for clear error." *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024).

In determining Oladokun's offense level under the Guidelines, the PSR applied the guideline for conspiracy charges, which directs application of "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). Because the relevant substantive offense was bank fraud, the PSR then applied the fraud guideline, *see id.* § 2B1.1, and recommended an eighteen-level enhancement based on Oladokun's intended loss amount of $4,178,501, *see id.* § 2B1.1(b)(1)(J) (pertaining to a "loss" exceeding $3.5 million but not more than $9.5 million). At sentencing, Oladokun objected to the PSR's use of the intended loss amount, arguing that "the plain meaning of the term 'loss' [in Section 2B1.1(b)(1)] is the actual loss, and therefore there [is] no need under the law to defer to the agency interpretation . . .

of intended loss, which is only in the commentary."[1]  App'x at 50.  The district court adopted the PSR's calculations and rejected Oladokun's objection, concluding:  (1) that it would "adher[e] to the Second Circuit's decisions in cases" applying the "guidelines commentary"; and (2) that, in the alternative, it "agree[d] with the government's reading of the conspiracy guideline, which includes the intended loss."  App'x at 135.

On appeal, Oladokun argues that the district court erred in relying on the commentary to Section 2B1.1(b)(1), which, in his view, "impermissibly expands 'loss' in the Guideline[s] . . . to include intended loss as well."  Appellant's Br. at 14.  Although not briefed by the parties, Oladokun suggested at oral argument that the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), precludes continuing reliance on the Guidelines commentary.  However, Oladokun does not challenge the district court's alternative ground for

---

[1]  At the time of Oladokun's appeal, the Guidelines' definition of loss under Section 2B1.1 as "the greater of actual loss or intended loss" appeared in the commentary to that Section under Application Note 3(A).  U.S.S.G. § 2B1.1 app. n.3(A) (2015).  However, as of November 1, 2024, Amendment 827 to Section 2B1.1 struck this definition from Application Note 3(A) and inserted it into the text of Section 2B1.1(b)(1).  *See* U.S.S.G. § 2B1.1 amend. 827 (2024).  We need not consider how this amendment may impact Oladokun's arguments regarding the application of the Guidelines' commentary to the calculation of his sentence because it has not been raised by the parties, and in any event, as set forth below, we affirm the district court's determination regarding loss amount on its alternative ground, pursuant to Section 2X1.1(a).

using the $4,178,501 intended loss amount based on the conspiracy guideline, which requires sentencing courts to consider "any *intended* offense conduct" when applying any enhancements from the guideline for the substantive offense. *See* U.S.S.G. § 2X1.1(a) (emphasis added); *see also United States v. Rosa*, 17 F.3d 1531, 1549–50 (2d Cir. 1994) (affirming district court's consideration of the intended loss amount under Section 2B1.1(b)(1) based on the application of Section 2X1.1(a)). Nor does Oladokun challenge the district court's determination that his intended loss amount exceeded $3.5 million. Therefore, we affirm the district court's use of the $4,178,501 intended loss amount pursuant to the language of Section 2X1.1(a) and need not address Oladokun's arguments regarding the Guidelines commentary to Section 2B1.1(b)(1) "because an independent ground for the [district court's] decision remains unchallenged."[2] *McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005); *see also Green v. Mazzucca*, 377 F.3d 182, 183 (2d Cir. 2004)

---

[2] Even if this independent ground were challenged, we conclude that the district court correctly applied the conspiracy guideline—which expressly instructs courts to consider "intended offense conduct that can be established with reasonable certainty"—to determine that Oladokun's intended loss amount warranted an eighteen-level enhancement under the Guidelines. U.S.S.G. § 2X1.1(a); *see also id.* § 2B1.1(b)(1)(J).

9

("[W]hen a judgment rests on two independent grounds, a failure to appeal either one of them justifies summary affirmance.").[3]

### B. Ten or More Victims under Section 2B1.1(b)(2)(A)(i)

Oladokun next argues that the district court erred by counting identity-fraud victims when imposing the two-level enhancement for an offense involving ten or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(i). Because Oladokun did not object to the application of Section 2B1.1(b)(2)(A)(i) before the district court, we review this challenge for plain error. *United States v. Gates*, 84 F.4th 496, 503 (2d Cir. 2023). To show plain error, Oladokun must establish that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United*

---

[3] The concurrence curiously suggests that nothing "more than a mere citation [would be] required" for us to resolve the issue under Section 2B1.1(b)(1), *Post* at 2, but then engages in over ten pages of legal analysis to address the issue. Moreover, to date, our Court has not addressed the question of how Guidelines commentary should be interpreted in light of *Loper Bright*. Indeed, none of the cases cited by the concurrence as "squarely reject[ing]" Oladokun's argument even mentions *Loper Bright*, *id*. at 1, let alone its potential impact on the reasoning set forth in *Rainford*. Because there exists an unchallenged independent ground to affirm the district court's decision based upon binding precedent under another Guidelines provision, namely, under Section 2X1.1(a), we see no reason to reach that unbriefed issue today regarding the impact of *Loper Bright*.

*States v. Marcus*, 560 U.S. 258, 262 (2010) (alteration adopted) (internal quotation marks and citation omitted).

Section 2B1.1(b)(2)(A)(i) provides for a two-level enhancement if the offense "involved 10 or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(i). "Two application notes are relevant to the determination of who is a victim" under Section 2B1.1(b)(2). *United States v. Jesurum*, 819 F.3d 667, 670 (2d Cir. 2016). Application Note 1 defines a "victim" as, *inter alia*, "any person who sustained any part of the actual loss," U.S.S.G. § 2B1.1 app. n.1., and Application Note 4(E) expands that definition in "a case involving means of identification" to include "any individual whose means of identification was used unlawfully or without authority," *id.* § 2B1.1 app. n.4(E). Thus, where, as here, a case involves means of identification, victims include any individuals whose identities were used without authority, "regardless of whether [they] suffered any financial loss." *Jesurum*, 819 F.3d at 671; *accord United States v. Wilson*, 657 F. App'x 24, 30 (2d Cir. 2016) (summary order).

Here, the PSR identified nine individuals whose identities were stolen and used to open bank accounts during the fraud scheme, and at least two companies which suffered loss as a result of the scheme, and Oladokun made no objection to these factual findings at sentencing. Because the existence of eleven victims—nine

suffering from identity theft and two from financial loss—was undisputed, the district court did not err, plainly or otherwise, in applying the enhancement for ten or more victims under Section 2B1.1(b)(2)(A)(i). *See United States v. Garcia-De La Rosa*, 832 F.3d 128, 133 (2d Cir. 2016) ("It was not error, much less plain error, for the district court to base its sentence in part on an unchallenged factual finding adopted from the PSR.").

## C. Five or More Participants under Section 3B1.1(a)

Oladokun additionally challenges the district court's application of a four-level enhancement under U.S.S.G. § 3B1.1(a), arguing that there was an insufficient factual basis to conclude that his offense involved five or more participants. As noted *supra*, we review the district court's factual findings in determining the applicable Guidelines range for clear error. *United States v. Kirk Tang Yuk*, 885 F.3d 57, 82 (2d Cir. 2018). "A finding of fact is clearly erroneous only if, after reviewing all of the evidence, this Court is left with the definite and firm conviction that a mistake has been committed." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015) (internal quotation marks and citation omitted).

Section 3B1.1(a) provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). "[P]articipants need

12

not be identified by actual name in order for a [leadership] enhancement to apply, so long as the record allows the district court reasonably to find the existence of other participants in the scheme." *United States v. Diamreyan*, 684 F.3d 305, 309 (2d Cir. 2012) (internal quotation marks and citation omitted). Here, the record supports the district court's finding that the scheme involved five or more participants.[4] Because Oladokun objected to the application of Section 3B1.1(a) at sentencing, the district court held a *Fatico* hearing, at which the government presented, *inter alia*, cell-phone evidence demonstrating Oladokun's communications with five specific participants in the conspiracy—namely, co-defendant Henry Ogbuokiri and four uncharged co-conspirators whose names were saved in Oladokun's phones as "Annie," "Junior Boss," "Mohammed," and "Homes Cuzo Men." App'x at 69; *see also id.* at 69–79 (describing messages exchanged between Oladokun and each of the five identified participants). Although the district court did not identify the participants by name, "the [communications] contained in the record . . . provide sufficient unique indicia to

---

[4] Oladokun does not challenge the district court's factual determination that he was an organizer or leader of the criminal activity.

13

support the district court's conclusion that there were five or more participants."[5] *Diamreyan*, 684 F.3d at 309. We therefore discern no error in the factual basis for the district court's application of the four-level enhancement under Section 3B1.1(a).

### D. Ineffective Assistance of Counsel

Finally, Oladokun argues in his supplemental *pro se* brief that defense counsel was ineffective for failing to request a *Franks* hearing when moving to suppress evidence seized from his residence pursuant to a warrant. Where, as here, a defendant raises an ineffective assistance of counsel claim on direct appeal, we may: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent 28 U.S.C. § 2255 motion; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Doe*, 365 F.3d 150, 152 (2d Cir. 2004) (alterations adopted) (internal quotation marks and citation omitted). "The last option is appropriate when the factual record is fully developed and resolution of the Sixth Amendment claim on

---

[5] Although the government also argued that the other individuals charged in the indictment provided additional support for the five-participant requirement under this enhancement, we need not address that argument because we conclude that the above-referenced five individuals were sufficient to support the factual finding and corresponding enhancement.

direct appeal is beyond any doubt or in the interest of justice." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (internal quotation marks and citation omitted).

Here, it is "beyond any doubt" that Oladokun's claim of ineffective assistance of counsel is meritless. *See id.* "To succeed on an ineffective assistance claim, a [defendant] must show that (1) counsel's performance was objectively deficient, and (2) [the defendant] was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 692–93 (1984)). To establish prejudice, a defendant "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citation omitted). Although Oladokun's counsel argued in the district court that the application for the warrant to search Oladokun's residence relied on a mistaken identification of him in a photograph from a bank surveillance camera, Oladokun nevertheless contends that his counsel was ineffective for failing to request a *Franks* hearing to prove that the alleged misidentification was intentionally or recklessly false. However, the district court concluded that "there was sufficient evidence in the warrant, *whether*

*[it] consider[ed] the Bank of America photo or not*, for probable cause that there was a conspiracy to commit fraud, that Mr. Oladokun was a part of that conspiracy, and that he may have had evidence of his involvement in that conspiracy in the home." Supp. App'x at 66–67 (emphasis added).

On appeal, Oladokun does not challenge the district court's finding that the warrant application supported probable cause even without the surveillance evidence. Thus, even assuming *arguendo* that Oladokun's counsel was ineffective, Oladokun cannot show prejudice because "the district court need not conduct a *Franks* hearing" when, "after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). Because Oladokun fails to meet the prejudice prong, his claim of ineffective assistance of counsel must be rejected. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

### III. CONCLUSION

We have considered Oladokun's remaining arguments and find them to be without merit.[6] Accordingly, for the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[6] Oladokun additionally challenges his indictment on the ground that the government committed fraud by presenting evidence from the bank surveillance camera to the grand jury. However, this argument is waived because "[a] defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings." *United States v. Bastian*, 770 F.3d 212, 217 (2d Cir. 2014) (internal quotation marks and citation omitted).

MENASHI, *Circuit Judge*, concurring in part and concurring in the judgment:

In this appeal, Oladayo Oladokun argues that the district court erred by calculating the loss amount under U.S.S.G. § 2B1.1(b)(1) to include "the greater of actual loss or intended loss," which is what the application note to the guideline instructed the district court to do. U.S.S.G. § 2B1.1, comment. (n.3(A)). According to Oladokun, the application note was invalid because it "expand[ed] the plain meaning of the actual Guideline text" to "include intended loss" in addition to actual loss. Appellant's Br. 14.

We have squarely rejected this argument. *See United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024) ("[T]he application note defining loss is neither inconsistent with nor a plainly erroneous reading of the guideline. … [T]he guideline does not contradict the understanding expressed in the commentary that 'loss' encompasses intended loss."). And we have rejected it again. *See United States v. Zheng*, 113 F.4th 280, 300 (2d Cir. 2024) ("[I]t was proper for the district court to defer to the Guidelines commentary interpreting 'loss' in § 2B1.1(b)(1)."). And we have rejected it a third time. *See United States v. Pasternak*, No. 23-6316, 2024 WL 4763986, at *4 (2d Cir. Nov. 13, 2024) ("[T]he Guideline is not in conflict with the commentary's explanation that 'loss' includes the total amount paid."). And we have done so still a fourth time. *See United States v. Rech*, No. 23-6477, 2024 WL 5165454, at *1 (2d Cir. Dec. 19, 2024) ("In *Rainford*, we held that the Guidelines commentary that includes 'intended loss' in the definition of 'loss' remains authoritative after *Kisor*. We therefore conclude that the District Court properly deferred to the Guidelines commentary interpreting 'loss' under § 2B1.1(b)(1).") (citations omitted).

In today's opinion, however, the court declines to cite our binding precedent to say that Oladokun's argument is foreclosed. The court instead insists that it "need not address Oladokun's arguments regarding the Guidelines commentary to Section 2B1.1(b)(1)," as if something more than a mere citation were required. *Ante* at 9. I do not join that part of the court's opinion and instead concur in the judgment on the ground that Oladokun's argument is foreclosed by precedent. Because the court erroneously suggests that our precedents are somehow open to question, I write separately to explain the applicable law.

## I

The guidelines provide for a sentencing enhancement when the "loss" attributable to the offense exceeds certain levels. U.S.S.G. § 2B1.1(b)(1). In the version of the Guidelines Manual in effect at the time of Oladokun's sentencing, an application note clarified that the "loss is the greater of actual loss or intended loss." *Id.* § 2B1.1, comment. (n.3(A)) (2021).

In *Stinson v. United States*, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. 36, 38 (1993). In *Rainford*, we explained that "[w]e adhere to *Stinson*," and we applied that standard to conclude that the application note defining loss is "neither inconsistent with nor a plainly erroneous reading of the guideline." 110 F.4th at 475 & n.5. "[T]he term 'loss' in § 2B1.1 has no one definition and can mean different things in different contexts, so the guideline does not contradict the understanding expressed in the commentary that 'loss' encompasses intended loss." *Id.* at 475

2

(internal quotation marks omitted). For that reason—as we have subsequently reiterated—"the district court, relying on the Guidelines commentary, properly used intended loss when calculating [the] Guidelines sentencing range." *Zheng*, 113 F.4th at 300.

That precedent applies straightforwardly here. Because application note 3(A) validly clarified the scope of "loss" in § 2B1.1(b)(1) as referring to the greater of actual or intended loss, the district court properly calculated Oladokun's loss enhancement based on the intended loss amount.

## II

Oladokun offers a similar challenge to the district court's application of a two-level enhancement for an offense involving ten or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(i). He argues that the district court erred by consulting the definition of "victim" in the application note. The application note explains that, "in a case involving means of identification," the victims include not only someone who suffered an actual loss but also "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1, comment. (n.4(E)).

According to Oladokun, the term "victim" in the guideline is "not ambiguous in any sense" but refers only to those who have suffered an actual loss. Appellant's Br. 18. The plain meaning of the term therefore excludes a "possible victim of an identity theft offense" that "resulted in no financial loss." *Id.* Given the lack of ambiguity, says Oladokun, the district court erred in consulting an application note that "expands the Guideline definition" beyond that plain meaning. *Id.*

This argument rests on a misunderstanding of the role of the guidelines commentary. "Because the Sentencing Commission adopts the commentary alongside the guidelines … the guidelines and the commentary operate together as a reticulated whole, and accordingly the two are to be read together." *Rainford*, 110 F.4th at 475 n.5 (internal quotation marks and citation omitted). We have explained that "[t]he guideline provision and the commentary 'are to be read together' because 'no threshold test of ambiguity need be passed before the commentary can be consulted.'" *Id.* at 486 (alteration omitted) (quoting *United States v. Pedragh*, 225 F.3d 240, 244 (2d Cir. 2000)). "Rather, commentary explains the guidelines and provides concrete guidance as to how even *unambiguous* guidelines are to be applied in practice." *Pedragh*, 225 F.3d at 244 (quoting *Stinson*, 508 U.S. at 44). "Only when 'the commentary contradicts the provision's text' does 'the provision's plain language control.'" *Rainford*, 110 F.4th at 486 (alterations omitted) (quoting *United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir. 1996)).

Again, our precedents foreclose Oladokun's argument that a district court may not consult an application note when applying a purportedly unambiguous guideline.

### III

In *Stinson*, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38. Oladokun suggests that the guidelines commentary may no longer be considered authoritative following the decisions of the Supreme Court in *Kisor v. Wilkie*, 588 U.S. 558 (2019), and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Stinson* analogized

the Sentencing Commission's commentary to the guidelines to a federal agency's interpretation of a regulation that it has promulgated pursuant to the Administrative Procedure Act. *See Stinson*, 508 U.S. at 45 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). According to Oladokun, the deference accorded to the guidelines commentary must follow the deference accorded to such an agency interpretation. And under current precedent an agency interpretation of a regulation may be consulted "only if a regulation is genuinely ambiguous." *Kisor*, 588 U.S. at 573. In addition to being foreclosed by our precedent, the argument is unpersuasive.

## A

First, *Loper Bright* said nothing about deference to an agency interpretation of a regulation. Oladokun invoked *Loper Bright* at the oral argument and, in a confused footnote to its opinion, the majority wrongly suggests that *Loper Bright* might affect our treatment of the guidelines commentary. *See ante* at 10 n.3. But *Loper Bright* does not implicate *Stinson*. Rather, that case considered the deference to be accorded to an agency interpretation—that is itself reflected in a binding regulation or adjudication, *see United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)—of a statute passed by Congress. In doing so, *Loper Bright* overruled *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

In *Stinson*, the Supreme Court explained that the commentary of the Sentencing Commission is not analogous to an agency interpretation of a statute. "We … find inapposite an analogy to an agency's construction of a federal statute that it administers," said the Court, because the commentary "has a function different from an agency's legislative rule" and, "unlike a legislative rule, is not the product of delegated authority for rulemaking." *Stinson*, 508 U.S. at

5

44. The *Stinson* standard, therefore, does not depend on the status of *Chevron*. *See id.* (declining to rely on *Chevron*); *see also Kisor*, 588 U.S. at 591 (Roberts, J., concurring in part) ("Issues surrounding judicial deference to agency interpretations of their own regulations are distinct from those raised in connection with judicial deference to agency interpretations of statutes enacted by Congress.").

**B**

Second, *Kisor* did not purport to overrule or to modify *Stinson*. Even if we thought that *Kisor* suggested a different approach to guidelines commentary would be appropriate, if "the Supreme Court has not overruled *Stinson*," we may not conclude that it has. *Rainford*, 110 F.4th at 475 n.5. Rather, when "a precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to the Supreme Court the prerogative of overruling its own decisions." *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

Nor does *Stinson* depend on the case law governing deference to an agency interpretation of a regulation. To be sure, the Court in *Stinson* identified a helpful "analogy" to that case law when deciding how to treat the guidelines commentary. *Stinson*, 508 U.S. at 44. The Court cautioned that "the analogy is not precise," but it noted "respects" in which "this type of commentary is akin to an agency's interpretation of its own legislative rules." *Id.* at 44-45. It did not simply apply *Seminole Rock* to the guidelines commentary but set forth a standard of deference applicable specifically to "commentary in the Guidelines Manual that interprets or explains a guideline." *Id.* at 38. Thus, "while *Stinson* drew from *Seminole Rock*, the two doctrines were distinct from the beginning and remain distinct today. It does not

6

follow that refining *Seminole Rock* automatically refines *Stinson*." *United States v. Vargas*, 74 F.4th 673, 682 (5th Cir. 2023) (citation omitted).[1]

At the same time, "*Kisor* did not discuss *Stinson* at all: it merely included *Stinson* in a footnote string-cite of sixteen cases described as 'decisions applying *Seminole Rock* deference,'" a footnote that "signals no intention to change *Stinson*" because it "is merely descriptive and is not even joined by a Court majority." *Vargas*, 74 F.4th at 681 (quoting *Kisor*, 588 U.S. at 569 n.3). The substance of the discussion in *Kisor*, moreover, does not extend to the Sentencing Commission. "*Kisor* had everything to say about executive agencies and precious little about the Sentencing Commission." *United States v. Maloid*, 71 F.4th 795, 806 (10th Cir. 2023). That is "a critical distinction" because "[t]he Commission is neither an executive agency nor strictly limited by the APA." *Id.*; *see also* 28 U.S.C. § 991(a) (establishing, "as an independent commission in the judicial branch," the "United States Sentencing Commission"). For that reason, it is not possible to "say that *Kisor* meant for its new standard—crafted entirely in the context of executive agencies—to reach the Commission." *Maloid*, 71 F.4th at 807.

---

[1] *See also United States v. Riccardi*, 989 F.3d 476, 491 (6th Cir. 2021) (Nalbandian, J., concurring in part and in the judgment) ("Though *Stinson* considered *Seminole Rock* in deciding to extend deference to guideline commentary, we have viewed *Stinson* deference as creating an independent standard since its inception."); *United States v. Moses*, 23 F.4th 347, 352 (4th Cir. 2022) ("[E]ven though the two cases addressed analogous circumstances, *Stinson* nonetheless continues to apply when courts are addressing Guidelines commentary, while *Kisor* applies when courts are addressing executive agency interpretations of legislative rules.").

## C

Third, even if we were free to revisit *Stinson* in light of the analogy between the guidelines commentary and an agency interpretation of a regulation, that analogy does not require a reconsideration of *Stinson*. The Supreme Court in *Kisor* considered the objection that *Seminole Rock* deference "encourages agencies to issue vague and open-ended regulations, confident that they can later impose whatever interpretation of those rules they prefer." *Kisor*, 588 U.S. at 585 (citing John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612, 654-69 (1996)). According to that objection, deference to agency interpretations "supplies agencies with a shortcut around the APA's required procedures for issuing and amending substantive rules that bind the public with the full force and effect of law." *Id.* at 608 (Gorsuch, J., concurring in the judgment). The agency might follow the required notice-and-comment procedures to promulgate the regulation, but the agency may then effectively revise the regulation through an interpretation announced, for example, in a "guidance document issued without affording the public advance notice or a chance to comment." *Id.*[2]

This objection does not neatly apply to the commentary of the Sentencing Commission. While "executive agency interpretations have been made … casually and broadly through, for example, the issuance of letters, opinions, press releases, and legal briefs without the notice-and-comment procedures of rulemaking," the "formally

---

[2] *See* Douglas H. Ginsburg & Steven Menashi, *Our Illiberal Administrative Law*, 10 NYU J.L. & Liberty 475, 508 (2016) ("[A]gencies frequently avoid the notice-and-comment safeguard by resorting instead to adjudications, interpretive rules, and policy statements or guidance documents.").

published Guidelines Manual" combines together "not only Guidelines and policy statements but also official commentary, all three of which were, in practice, generally promulgated by the notice-and-comment and congressional-submission procedure and which operate together as a reticulated whole." *Moses*, 23 F.4th at 355. Indeed, the Guidelines Manual explains that the commentary "accompanies the guideline sections" in order to avoid "an incorrect application of the guidelines." U.S.S.G. § 1B1.7.

Because of this integration of the commentary with the guideline sections, the "Sentencing Commission routinely publishes notice of its intention to amend the commentary and application notes to the Guidelines," and "[h]istory reflects that Congress has actively overseen the substance of the commentary to the Guidelines." *United States v. Rivera*, 76 F.4th 1085, 1090 (8th Cir. 2023); *see also United States v. Ponle*, 110 F.4th 958, 963 (7th Cir. 2024) ("The fact that the advisory note at issue underwent the public notice and comment process and [c]ongressional review distinguishes it from an executive agency's internal interpretation of its own regulations that animated the Supreme Court's concern in *Kisor*.").

At the time *Stinson* was decided, moreover, the guidelines commentary appeared to resemble an agency interpretation because the guidelines—like legislative rules promulgated through notice-and-comment procedures—were "bind[ing]." *Stinson*, 508 U.S. at 42 (quoting *Mistretta v. United States*, 488 U.S. 361, 391 (1989)); *see also* 18 U.S.C. § 3553(b)(1). Thus, the *Stinson* Court could conclude that "the guidelines are the equivalent of legislative rules adopted by federal agencies" and therefore that the Sentencing Commission's commentary that aims "to assist in the interpretation and application" of those binding guidelines was "akin to an agency's interpretation of its own legislative rules." *Stinson*, 508 U.S. at 45.

9

Once the guidelines became "effectively advisory," *United States v. Booker*, 543 U.S. 220, 245 (2005), the analogy to regulatory interpretation became even less straightforward. Under the advisory system, a sentencing court must *consider* the sentencing range the Sentencing Commission effectively recommends through a guidelines calculation, but it need not *adopt* the recommended sentence. There is no evident reason why the recommendation of the Sentencing Commission must be determined according to the Sentencing Commission's advisory guideline provisions while ignoring the Sentencing Commission's advisory commentary about how the provisions apply.

Nothing in *Kisor*—or in the deference doctrines applicable to agency interpretations of legislative rules—requires that result. If legislative rules were merely advisory, *Kisor* would make no sense. The distinctive feature of a legislative rule is that it has "the force and effect of law," *Kisor*, 588 U.S. at 583 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)), and therefore imposes "legally binding requirements on private parties," *id.* at 584 (internal quotation marks omitted).[3] For that reason, "the meaning of a legislative rule remains in the hands of courts," and the purpose of the *Kisor* framework is to ensure that "[n]o binding of anyone occurs merely by the agency's say-so." *Kisor*, 588 U.S. at 584.

After *Booker*, however, the appropriate sentence already remains in the hands of the courts, and no mere say-so of the

---

[3] *See also Kisor*, 588 U.S. at 615 (Gorsuch, J., concurring in the judgment) ("Under the APA, substantive rules issued by federal agencies through notice-and-comment procedures bear the force and effect of law and are part of the body of federal law, binding on private individuals, that the Constitution charges federal judges with interpreting.") (internal quotation marks and footnote omitted).

Sentencing Commission binds the courts or anyone else. *See Booker*, 543 U.S. at 245. Because the guidelines and the commentary have the same legal status and are adopted through the same process, there is no obstacle to recognizing that "the guidelines and the commentary operate together as a reticulated whole, and accordingly the two are to be read together." *Rainford*, 110 F.4th at 475 (internal quotation marks and citation omitted). No rule-of-law principle requires a sentencing court to calculate the advisory guidelines range in isolation from the advisory commentary.

**D**

Fourth, "because the Sentencing Commission adopts the Guidelines and the commentary as a reticulated whole that should be read as such, the commentary qualifies as an authoritative source of interpretation under *Kisor*." *Zheng*, 113 F.4th at 299-300 (internal quotation marks omitted). In other words, "the commentary necessarily reflects the Commission's 'authoritative, expertise-based, fair, or considered judgment.'" *Rainford*, 110 F.4th at 475 n.5 (quoting *Kisor*, 588 U.S. at 573); *see also Pedragh*, 225 F.3d at 244 ("[S]ince the commentary is part and parcel of the Sentencing Guidelines Manual and … is written by the same body that is charged with drafting the guidelines, the two are to be read together.").

There is no concern that the guidelines commentary does not (1) represent the Sentencing Commission's "authoritative or official position, rather than any more ad hoc statement not reflecting the agency's views," (2) "implicate its substantive expertise," or (3) "reflect fair and considered judgment" rather than "a merely convenient litigating position or *post hoc* rationalization." *Kisor*, 588 U.S. at 577-79 (internal quotation marks and alteration omitted).

11

It is true that under our precedents "no threshold test of ambiguity need be passed before the commentary can be consulted," *Rainford*, 110 F.4th at 486 (quoting *Pedragh*, 225 F.3d at 244), whereas *Kisor* directs that deference to an agency interpretation of a regulation "can arise only if a regulation is genuinely ambiguous," *Kisor*, 588 U.S. at 573. But that difference results from (1) the different legal status of a guideline provision that, unlike a regulation, has the same merely advisory status as the commentary that interprets it, and (2) the different purpose of the guidelines commentary as compared to agency interpretation.[4] "The Sentencing Commission is judicial in nature" while "the role of other federal agencies is typically executive" such that "[t]heir interpretations seek not just to inform and guide but also to regulate the broad range of people covered by the particular agency's jurisdiction, and they do so without the express authorization of Congress." *Moses*, 23 F.4th at 355. Such "differences justify a distinct approach in considering Guidelines commentary, on the one hand, and an agency's interpretation of its legislative rules, on the other. And treating the two differently is entirely consistent with *Kisor*." *Id*.

*       *       *

For these reasons, I would reject Oladokun's arguments that the district court should have disregarded the guidelines commentary as foreclosed by applicable precedent. Because the court declines to do so, I concur only in part and in the judgment.

---

[4] *See Moses*, 23 F.4th at 356 ("*Kisor* deference, as the *Kisor* Court explained, comes into play only when agencies are *interpreting* their regulations. But the Sentencing Guidelines provide a broader role for commentary, as recognized in *Stinson*.").